* In the case of *State ex rel. Off v. Smith*, 14 Wis. 497, the doctrine of this case as to the last proposition was reconsidered and again affirmed. Reference was again made to these cases in *State ex rel. Holden v. Tiernay*, 23 Wis. 430. The whole subject has been recently considered in the court of appeals of New York, in the case of *People ex rel. v. Clute*, 50 N. Y. 451, where the authorities are collated and reviewed, and the doctrine of the Wisconsin cases is somewhat qualified.

---

## YATES v. MARTIN.

1. AGREEMENT—STATUTE OF FRAUDS.—An oral agreement, to execute a written agreement for the sale or conveyance of land, is not such an one as can be enforced, as the thing which was to have been promised to be performed by such written agreement would be within the statute of frauds.
2. SAME.—If an oral promise to make a written agreement, touching an interest in lands, is broken by a refusal to execute it, a suit cannot be maintained to recover damages; otherwise, if an oral agreement had been for the execution of a written agreement which, if oral, would not be within the prohibition of the statute.

(1 *Chand.* 118.)

ERROR to the late District Court for *Milwaukee* County.

The plaintiff in error brought an action of assumpsit for the recovery of damages for the breach of a verbal agreement. The substance of the agreement declared upon, and stated in several counts in the declaration, was as follows: On the eleventh day of December, 1846, at Milwaukee, in consideration that *Yates*, the plaintiff in error, at the special request of

*Martin*, the defendant in error, would then and there agree to pay to *Martin* the sum of ten dollars, *Martin* undertook and promised *Yates* to sign his name to a certain agreement in writing, which *Yates*, at the special instance of *Martin*, had drawn and written, and that *Martin* would then and there deliver the said agreement in writing, so signed as aforesaid, to *Yates*, which agreement in writing is as follows, to wit : " For and in consideration of ten dollars to me in hand paid, I hereby agree to accept of $5,000, above cost, of all the real estate owned by me in Milwaukee, and the furniture in my house ; one-half down, and the other half in one year, secured by mortgage on the premises. This offer to stand open for twenty-four hours. Friday, 7 P. M., Dec. 11, 1846."

The declaration alleged that *Martin* refused to sign the written agreement, and contains sufficient averments to sustain the action, provided the basis on which it is founded is adequate for that purpose. *Martin* demurred generally, and *Yates* joined in demurrer.

The demurrer was argued before the district court and was sustained, and judgment was given for the defendant, and the cause was brought into this court by writ of error.

*S. Sea*, for plaintiff in error, made several points in support of the cause of action as specified in the declaration, amongst which were :

1. That it was the natural right of any person to contract for any subject-matter or thing at his option unless it was in conflict with legal prohibition ; and that in such a case the court could not avoid giving to such a contract its full operation and effect ; that the contract in question was such that it could be enforced, unless it was inhibited by statutory provision. To this point he cited 2 Black. Com. 446 ; Cow. Tr. 56 ; Chitty on Cont. 291 ; Comyn's Dig. Covenant A. 1 ; Chitty on Cont. 866.

2. That a contract to make a contract is a legal and enforceable agreement which courts of law will recognize. Chitty

on Cont. 866 ; 39 Eng. C. L. 408 ; 19 Wend. 502 ; Comyn on Cont. 2.

3. That this agreement was not within the statute of frauds, and as defining the principles of that statute, he cited Sug. on Vend. 95, 96, 97, 131 ; Chitty on Cont. 66 ; 5 Johns. 275.

4. To show that the agreement in this case was merely an agreement to make an agreement, and hence not within the statute of frauds, he cited 8 Met. 435 ; 4 id. 406 ; 9 id. 435 ; 17 Pick. 538 ; 5 Hill, 112 ; 6 Wend. 464 ; 1 Binney, 454.

5. To show that if the contract in writing had been signed by *Martin*, *Yates* would have been entitled to all the damages that would ensue in case of breach thereof, and that having promised to execute the same, and having accepted the consideration upon which he agreed to execute it, he was liable in law for damages, and those damages would have been commensurate to the benefits which would have resulted if the contract had been carried into effect, he cited Chitty on Cont. 389 ; 46 Law Library, 31, 34, 47 ; 9 Cow. 274 ; 2 Denio, 133 ; 19 Wend. 464 ; 26 id. 436 ;· 5 Vin. Ab. Cont. 528.

*James S. Brown* and *J. E. Arnold*, for defendant, argued that the agreement to execute the agreement in question was within the statute of frauds, inasmuch as if the supposed agreement had been signed it would have been within the provisions of that statute, and to this point cited 2 Story's Eq. 93 ; R. S. Wis. 164. That if the contract alleged to have been agreed to be signed, had been signed, it might have been enforced on the chancery side of the court, if free from impeachment by the statute of frauds, but that it being clearly within the statute could not be enforced. Sug. Vend. 138, 140, § 8 ; id. 126, § 24 ; 11 Mass. 342. In the case last cited, a deed was executed and delivered, under an oral agreement of the adverse party, to execute a bond of defeasance at a future day. The defeasance, if executed, would have defeated an absolute title. It was in that case held that the agreement

was within the statute of frauds.   See also, to the same point,
5 Mass. 133 ; 6 id. 460.   That the agreement, to be operative,
should be signed by both parties ; and to this point was cited
5 Bos. & Pul. 252 ; Chitty on Cont. 396 ; Sug. Vend. 119.
That, in order to ascertain and define what was meant and
intended by the parties, all their acts relating to the matter
of the contract were to be considered and regarded.   That
an action brought upon an offer of the sale of chattles, there
being no consideration, there was no mutuality.   3 Term,
653 ; 4 Bos. & Pul. 252.   That the contract was not enforce-
able in law because it was not subscribed or to be subscribed
by both parties, and to this point was cited 3 Johns. 418 ;
6 Wend. 103 ; 12 Johns. 190.

WHITON, J.   The declaration in this case contains a num-
ber of special counts, alleging the same cause of action in
different forms, to which there is a general demurrer.   The
contract declared upon is a parol agreement, and is substan-
tially as follows :  " That *Martin*, on the 11th day of Decem-
ber, 1846, at Milwaukee, in consideration that *Yates*, at the
special request of *Martin*, would then and there agree to pay
him the sum of ten dollars, undertook and promised *Yates*
to sign his name to a certain agreement in writing, which
*Yates*, at the special request of *Martin*, had drawn and writ-
ten, and that he would then and there deliver the agreement
in writing so signed as aforesaid to *Yates*, which agreement
in writing is as follows : ' For and in consideration of ten
dollars to me in hand paid, I hereby agree to accept of $5,000
above cost, of all the real estate owned by me in Milwaukee,
and the furniture in my house, one-half down and the other
half in one year, secured by mortgage on the premises ; this
offer to stand open for twenty-four hours.   Friday, 7 P. M.,
Dec. 11, 1846.' "

The declaration alleges that *Martin* refused to sign the
written agreement, and contains the necessary averments to

charge him if the contract declared upon is of such a nature as to entitle *Yates* to recover.

The district court of Milwaukee county sustained a demurrer to the declaration, and judgment was thereupon rendered against *Yates*, who brings the case here to reverse the judgment. Several objections were taken to the declaration by the counsel for the defendant on the argument ; one is, that the parol agreement sued upon is void, for the reason that the written one would have been utterly worthless and void for uncertainty and for want of mutuality if it had been executed ; another is, that admitting the written agreement would have been of any force or effect, it would have conveyed an interest in land, and that consequently the parol agreement to execute it is within the statute of frauds, and therefore void. It is clear, that if the written agreement would have been worthless for all purposes, the parol agreement to make it is not of such a nature as will support an action, but this case can be disposed of without inquiry into this objection. I shall therefore confine myself to the consideration of the effect of the statute of frauds upon the contract.

Our statute differs somewhat from the English one, and the 8th section of title 1st, which is principally relied on by the defendant in error, is as follows :

" Every contract for the leasing for a longer period than one year, or for the sale of any lands, or interest in lands shall be void unless the contract or some note or memorandum thereof, expressing the consideration be in writing and be subscribed by the party by whom the lease or sale is to be made."

The defendant contends that the parol contract declared upon is a contract for the sale of an interest in land within the meaning of the statute, if it has any validity, because the written one would, if it had been executed by the defendant, have conveyed to the plaintiff the right or power to purchase the real estate described in it. On the other hand, the plain-

tiff contends that the written agreement or contract would, if it had been executed by the defendant according to the parol agreement, have been a mere offer on his part to sell the property on the terms mentioned in the agreement, which offer the plaintiff might or might not have accepted, and could not have the effect to convey any interest in land within the meaning of the statute.   The question before the court arises upon the consideration of the nature of this agreement, for, if in case it had been executed, it would have conveyed any legal or equitable interest in the real estate mentioned in it to the plaintiff; the agreement declared upon, which is an agreement to make the written agreement, is an agreement for the sale of an interest in land, and therefore within the statute.   I am of the opinion that the written agreement would have conveyed to the plaintiff an equitable interest in the real estate mentioned in it, if it had been executed according to the parol contract set out in the declaration, and would have been valid for any purpose.   Sug. Vend. 126, 138 ; 4 Mass. 488 ; 5 id. 133 ; 6 id. 460 ; 11 id. 342.

I can see no difference, so far as the question before the court is concerned, between this written agreement and a bond conditioned that if the plaintiff would pay a certain sum of money by a certain time, the defendant would convey the legal title to the real estate in question, for it can make no difference whether the obligation is to convey the title to or an interest in land merely, as parol contracts for the sale of. either are equally within the statute.

It cannot be doubted, I think, that such a bond would have conveyed to the plaintiff an interest in land, as it would have given him the power to compel the defendant to convey the land.   It is equally clear that the plaintiff would have had the same power if the defendant had executed the written contract ; that the plaintiff might not have chosen to avail himself of it is true, but the obligation to convey would have been as binding on the defendant, as though the plaintiff had

himself been bound to pay the stipulated price of the land, and the latter would have had an interest in the land as completely vested in him as though he was thus bound.

It can make no difference that the obligation of the contract was all to be on the part of the defendant; his interest in the subject-matter of the contract would be affected as much as though both parties were equally bound. Such being the nature of the agreement which the defendant agreed to execute (if it would had had any force or validity at all), there can be no doubt as to the nature of the agreement to make it. It must be considered a parol agreement to sell an interest in land, and consequently within the statute. I have considered the written agreement as though it might have been enforced had the defendant executed it. It was contended in the argument for the defendant, that it would have been entirely void for the reason that it was vague, uncertain and without mutuality, and that the parol agreement sued on was consequently void also. I have not thought it necessary to consider that part of the case, and, of course, no opinion upon it is given.

The judgment of the district court is affirmed, with costs.

HUBBELL, J., *dissenting.* There is but one question in this case: Whether the contract sued upon is within the statute of frauds?

*Yates* sues *Martin* for damages for the breach of a verbal agreement. The general demurrer admits the agreement as set forth in the declaration. That agreement was, that *Martin*, in case *Yates* would pay him ten dollars, would sign and deliver to him a written instrument of which the following is a copy:

" For and in consideration of ten dollars to me in hand paid, I hereby agree to accept $5,000, above cost, of all the real estate owned by me in Milwaukee, and the furniture in my house, one-half down and the other half in one year, secured

by mortgage on the premises. This offer to stand open for twenty-four hours. Friday evening, 7 P. M., December 11, 1846."

The sole point is, whether · this instrument, had it been executed and delivered, would have given *Yates* "any interest" in *Martin's* "lands?" The statute of frauds of this state declares every contract for the sale of any interest in lands void, unless it is in writing ; and the better opinion seems to be, that a contract for a contract is within the statute, provided the second contract conveys any interest in land. And this interest is admitted to be the same, whether it is present or future, legal or equitable, direct or contingent.

If, therefore, the writing to which *Yates* became entitled under his verbal agreement, conferred *per se* any such interest, the verbal agreement was void, and this action cannot be sustained. If, on. the contrary, that writing by itself, as it would pass from the hands of *Martin* to *Yates*, conveyed *proprio vigore* no such interest, then this action is well brought.

What then would that writing convey ? It was a written offer by Martin to sell his real and personal estate for a fixed price. It was no better and no worse for having been purchased by ten dollars paid by *Yates*, except that such payment would enable *Yates* to enforce it, should he elect to do it, and should *Martin* refuse. But was it an instrument which any holder could enforce as it stood ? Certainly not. Without a tender of money or a written acceptance on the part of the holder, *Martin* would not be bound to fulfill it. It gave no *present* claim on *Martin's* land, because something must be done by the holder to entitle him to enforce it. It gave no *future* claim, because there was no future event then certain to happen which would make it available. As it came from *Martin*, pursuant to the verbal agreement, it was as unavailable in equity as at law. It conveyed no interest, present or future, equitable or legal, positive or contingent. It was a naked offer to sell at a fixed price. *Yates* might or

might not accept it.   Until he did accept, *Martin* could no more enforce it than a blank paper.   It was no contract until some further act was done by *Yates*, and that act *Yates* was not bound to do.   *Martin* had no interest in it which he could enforce in law or equity, and *Yates* had but the option of doing some future act by which he would acquire such an interest.   It was naked paper in the hands of *Yates*, blank paper to both him and *Martin* until something was done, and that something *Martin* could not compel, and *Yates* was at liberty to refuse.   It was in no sense, therefore, the conveyance of any interest or a contract for any interest ; it gave to *Yates* the naked *possibility* by some future act on *his* part, which he might perform or decline, to acquire an equitable interest in *Martin's* estate.   This was its whole scope and meaning, its entire purport and effect.   If it can be said that *Yates* acquired an interest in *Martin's* property by such an instrument, then every man has an interest in his neighbor's land when he knows its market price and has the money to buy, because he has a *possibility* by a single act of his own to get the property at a given price.   Every man who advertises his farm for sale in a public newspaper, stating the terms, gives to all the world a similar interest in his land, because, by *complying* with the terms, they will get a title, or by *accepting* the terms they will get a right to the title.   The upshot of the matter, as I understand it is, *Yates* wanted to get *Martin's* terms of sale ; Martin agreed to give them in writing for ten dollars.   *Yates* tendered the money and *Martin* refused to fulfill.   Had the agreement been to publish the terms in a newspaper, in consideration of ten dollars, it would have been the same.   The terms, when published, would have given all the world the right to comply, and the consideration paid by *Yates* would have been sufficient to bind *Martin*.   We are not to inquire into men's motives in making agreements or paying their money.   *Yates* may have wanted this writing for one purpose, *Martin* may have sup-

posed it for another ; no fraud is alleged, and the consideration is sufficient to bind the bargain. *Yates* may not have wished to comply with it. He may have wished to use it in some other transaction. It is enough for us to know that he wanted it, and had some trouble, expense and loss in preparing on his part to fulfill the verbal agreement—the agreement for the writing. *Martin* made the agreement, as appears by the declaration, and broke it, and damages are alleged as the consequence of the breach. The demurrer admits the averments of the declaration ; it seems to me there is no escape for *Martin* under this demurrer. What defense he may have on the trial ; what value *Yates* can fix upon the writing ; what amount of damages, more or less, he may be able to prove he sustained by reason of not obtaining the writing, is for another tribunal. This court cannot say there was no damage, much less that there was no breach ; and, as to the contract, I think that it was legal and might be enforced, not being within the statute of frauds by any possible correct construction.

To determine this case there is no occasion to go back to the books or to the courts. It all depends upon the paper writing which was the object of the verbal agreement. We all can see what that would have been good for. Any well informed business man can tell what could be done with it, as well as the most learned judge. If *Martin* could not sue on it or enforce it ; if *Yates* had the right to accept it or let it alone ; if no possible future event could make it available to either party unless *Yates* exercised a *volition* upon it and did some act to make it binding, then it is as certain as any mathematical proposition that, as it came from *Martin*, as it agreed for in the verbal contract, as it should have been delivered to *Yates*, it conveyed no interest in land, present or future, equitable or legal, direct or contingent.

These are my views of the case ; and I think the judgment of the court below ought to be reversed ; but my brethren differ from me, and the judgment must remain.