Croft vs. Bunster et al.

JAMES CROFT, Appellant, *vs.* H. B. BUNSTER, A. HYATT SMITH, et al.

APPEAL FROM CIRCUIT COURT, ROCK COUNTY.

Heard October 6.]                              [Decided November 18, 1859.

*Mortgage—Promissory Note—Mortgagor and Mortgagee— Assignor and Assignee—Foreclosure.*

Where S. was indebted to B., and deeded real estate to him to secure the payment of the debt, and B., for the purpose of retaining security for such debt, and for his own benefit, made his own note to P., and secured the same by mortgage on the land, and then reconveyed the land to S.; and P., by the direction of B., assigned the note and mortgage to C., and paid the consideration to B., P. never having paid any consideration either for the note and mortgage, or for making the assignment; it was held in an action by C., to foreclose the mortgage, that S., cannot set up, as a defense, that the execution and delivery of the note and mortgage to P., did not create a lien on the land for the want of a consideration from P. to B.

The owner, in fee of land, may convey the same without any consideration

passing from his grantee to him; the seal being sufficient to give validity to the deed. So he may encumber the land by mortgage, or other conditional estate, and a *bona fide* assignee of such estate will be protected by the registry laws.

A mortgage is a conveyance of lands with a proviso that the conveyance shall become void, on the payment of a sum of money, and operates to vest the title in the mortgagee, subject to the proviso.

The rule that an assignee of a mortgage takes the same subject to all equities is confined to those existing between the mortgagor and mortgagee, or such as accrue before actual notice of the assignment; and has never been extended to dealings between the parties to the mortgage and third parties.

A negotiable note, secured by mortgage, may, before maturity, be transferred like other negotiable paper, and the transferee takes it, relieved of all equities, between maker and payee. The mortgage, in such a case, passes as an incident to the note, and the holder can collect the whole amount of the note and mortgage.

The rule that an assignee of a mortgage can enforce the mortgage for no more than is justly and actually due between the mortgagor and mortgagee, had its origin before the practice of giving mortgages to secure the payment of promissory notes was known; and was adopted on the ground that the bond accompanying the mortgage, could be enforced in a court of law only for' the amount due; and that the assignee should be placed in no better position in equity than at law. But the rule has no application when the debt is secured by a negotiable promissory note, where the reason of the rule ceases.

The debt secured by the mortgage is the principal thing, the mortgage, the incident, and the transfer of the debt carries the mortgage.

The case of *Fisher vs. Otis*, *et al.*, 3 Chand., 83, considered and approved.

In an action to foreclose a mortgage, the maker cannot inquire into the consideration which passed from the assignee to the mortgagee for making the transfer.

The debt gives character to the mortgage, and fixes the rights and remedies of the parties under it. The mortgage does not determine the nature of the debt. Therefore, the *negotiable* character of the instrument witnessing the debt, is not destroyed, because its payment is secured by a mortgage.

The rights and remedies of an assignee, under a mortgage, are co-extensive with those he has under the instrument evidencing the debt.

A defendant to an action to foreclose a mortgage may contest the fact of the delivery of the mortgage to the mortgagee, for without delivery, the mortgage can have no legal existence; but if the plaintiff is the assignee of the mortgagee, the defendant can go no further. He cannot insist, as a defense, on a want of consideration from the assignee.

The facts in this case are fully stated in the opinion of the Chief Justice.

*Noggle, Williams, & Patterson,* for the appellant.

*J. H. Sleeper,* for the respondent, Smith.

*By the Court* DIXON, C. J.   The facts in this case, as gathered from the pleadings and proofs, are these: The defendant, A. Hyatt Smith, being a co-partner in business with one Henry O. Clark, and one Ira Justin, Jr, under the style and firm of H. O. Clark & Co., and said firm being in embarrassed circumstances, in order to enable them to settle their affairs, on the 22d day of April, 1854, executed, acknowledged and delivered to Clark, a general power of attorney, authorizing him to collect all demands due to him, Smith, from any person or persons, to pay all his just debts, to sell and dispose of any and all personal property and real estate belonging to him, in the county of Rock, and State of Wisconsin, to execute all necessary papers for the conveyance thereof, and receive the consideration therefor, to encumber said real estate by mortgage or otherwise, as said Clark should see fit, to institute suits for the collection of debts owing to Smith, and to deliver all papers, whether sealed or without seal, necessary for the transaction of all business by said power of attorney.  This power of attorney was recorded on the same day in the office of the Register of Deeds, of the county of Rock.  Among others, the firm of H. O. Clark & Co., were indebted to the defendant Bunster in the sum of $9,380, for the security of which, he held a chattel mortgage on their goods.

On the 25th day of May, 1854, Clark, by virtue of the power of attorney, conveyed all, or nearly all of the real estate belonging to Smith, and situated in the county of Rock, to Bunster, by warranty deed, which was on the same day

acknowledged and recorded in the Register's Office.  The deed expressed a consideration of $40,610, but no consideration was, in fact, paid or agreed to be paid, by Bunster to Clark for the same.  Smith being dissatisfied with the transfer of the real estate to Bunster, on the 5th of June following, applied to him to reconvey the same to himself.  This Bunster refused to do, unless Smith would allow him first to incumber the property by mortgage to an amount sufficient to pay the indebtedness of Clark & Co. to him.  To this proposition Smith acceded, and Bunster, thereupon, by several mortgages to different individuals, incumbered various parcels of the real estate conveyed to him by Clark as attorney, to the amount of $10,000; and afterwards, on the same day, reconveyed the whole of the same to Smith, subject to all incumbrances by mortgage or otherwise, which Smith assumed and was to pay.  Bunster incumbered the property by executing to the persons named as mortgagees, his promissory notes for the amounts desired, and then securing their payment by mortgages executed also by himself.

The mortgage for the foreclosure of which this action was brought, is one of those which were so made.  It was executed to L. F. Patten, to secure the payment of a promissory note for $2,000, payable to Patten, or order, one year from date, with interest at twelve per cent.  This note and mortgage bore date the 5th of June.  The mortgage was recorded on the 6th.  The deed from Bunster to Smith was recorded on the 13th day of June.  For this note and mortgage Patten paid no consideration whatever.  His name was used merely for the purpose of enabling Bunster to create the incumbrance.  The defendant Smith, in his answer, denies that they were ever delivered to Patten, but the proof shows conclusively that they were so; and that he retained them in his possession until they were transferred to the plaintiff Croft. On the 15th of January, 1855, Patten, at the instance of Bun-

ster, assigned and delivered them to the plaintiff, who paid to Bunster $1,900, as a consideration therefor. Patten received no consideration for the assignment. Croft at the time of the transfer to him, had no knowledge or information as to the circumstances under which the note and mortgage were executed, except such as was to be derived from the instruments themselves, and the records in the office of the Register of Deeds.

Upon these facts the circuit judge dismissed the complaint for the reason, " That the note and mortgage being made and held for the benefit of Bunster, were invalid in the hands of Patten, and created no lien upon the mortgaged premises, and the mortgage could not have been enforced, nor the note collected by Patten. That there was no actual delivery of the mortgage until its transfer to the complainant, and the mortgage could create no lien at that time, as the premises, months before, had been conveyed to Smith, and Bunster had no title to incumber. That, therefore, the mortgage never was a lien upon the premises." From this decision the plaintiff appealed to this court. The reasons assigned by the circuit judge for his decision, are substantially those which were urged here by the defendant's counsel for the purpose of sustaining the judgment.

In any view which we are able to take of this case we do not think the judgment of the circuit court can be sustained. The primary error consists in the assumption that the execution and delivery of the mortgage by Bunster to Patten, passed no title to Patten, and created no lien upon the mortgaged premises. It is not denied that at the time of its execution, Bunster was the owner in fee of the lands, with full power to convey. The only objection urged against its validity and existence as a legal instrument, is that Bunster received no consideration for it. Is this objection valid? We think not, and deem it unnecessary to cite authorities in support of the

position that the actual payment, on receipt of a considera-
tion is not essential to the validity of a deed or instrument ·
under seal. If Bunster, without consideration, had, in due
form, executed and delivered to Patten an absolute convey-
ance of the mortgaged premises, there can be no doubt that
it would have operated to vest in Patten the legal title.

A mortgage is the conveyance of lands with a proviso that
such conveyance shall be void on the payment of a sum of
money; and in like manner operates to vest the title in the
mortgagee, subject to such condition or proviso. Patten hav-
ing the legal title to, and a valid lien at law upon the mort-
gaged premises, by virtue of the execution, and delivery of
the mortgage to him, could convey that title and lien by as-
signment of the mortgage to the plaintiff. His assignment to
the plaintiff did so vest the title in him. The plaintiff being
a purchaser in good faith, and for a valuable consideration, is
protected by our registry laws (§ 29, chap. 59 of the R. S. of
1849), provided that the term " purchaser," as used in that
chapter should be construed to embrace every person to
whom any estate, or interest in real estate, should be convey-
ed for a valuable consideration, and also every assignee *of a
mortgage, or lease, or other conditioned estate.* See same pro-
vision in § 34, chap. 86, R. S., 1858.

It is not pretended that the plaintiff had any notice, actual
or implied, of the existence of any equities on the part of the
defendant Smith, or any one else. It was contended in argu-
ment that the plaintiff took the mortgage subject to all equi-
ties existing as well between Bunster and Smith, as between
Bunster and Patten. This is incorrect. The rule has always
been confined to equities existing between the mortgagor and
mortgagee, or acruing before actual notice of the assignment
is given to the mortgagor, and has never been extended to
transactions or dealings between the mortgagor or mortgagee
and third persons. *James vs. Morey*, 2 Cow., 297. On the

part of Bunster no equities are set up, or attempted to be maintained. This relieves the mortgage from all legal and equitable objections to its validity in the hands of the plaintiff; as to the note, he is protected by the well known principles of commercial law applicable to negotiable paper. He received it before maturity in the regular course of business, and paid for it a valuable consideration, without notice of defects if it had any.

Our attention was called to, and the appellants counsel relied in argument upon that portion of the opinion of this court, as originally organized, given in the case of *Fisher & Robinson vs. Otis, et al.*, 3 Chandler, 83, in which the judge who wrote the opinion says: "I am not prepared to deny that a negotiable note, secured by a mortgage, may be passed before maturity, in the course of business, like other negotiable paper; and that the transferee may take and hold it, free from all equities between the maker and payee. The mortgage, in such a case, would pass as an incident to the note, and might be enforced by the holder, in spite of any existing equities between the mortgagor and mortgagee. This doctrine is sustained by respectable authorities, and by the reason and sound policy which have long ruled in relation to commercial paper."

If the doctrine thus intimated be sound, it furnishes an additional reason for the reversal of the judgment in the present case. Upon due consideration we are not disposed to question or doubt its correctness. There is nothing in the nature of a mortgage opposed to it, and on principle it ought to be sustained. The doctrine that an assignee can enforce the mortgage for no more than is justly and actually due, between the mortgagor and the mortgagee, had its origin at a time when the practice of giving mortgages as collateral security for the payment of negotiable paper was wholly unknown; and was made to rest upon the

ground, that such would be the rule adopted in a suit at law, upon the covenant or bond to which the mortgage was collateral; and the assignee should stand no better in equity than at law.   1 Hillard on Mortgages, ch. 17, § 54.

The principle was first definitely settled in 1798, before Lord Loughborough, in the case of *Matthews vs. Wallwyn*, 4 Vesey, 118.   The case was thoroughly discussed, and in giving his opinion, the Lord Chancellor says : " Considering the general·principles upon which this court acts with regard to mortgages, I have no difficulty in deciding the point.   It is true that there is a legal estate or term ; but it must be apparent, on the face of the title, that it is  not an absolute conveyance of the term or legal estate; but as a security for a debt; and the real transaction is the assignment 'of a debt from A. to B.; that debt collaterally secured by a charge upon a real estate.   The debt, therefore, is the *principle thing*; and it is obvious that if an action was brought upon the bond in the, name of the mortgagee, as it must be, the mortgagor shall pay no more than what is really due upon the bond.   If an action of covenant was brought by the covenantee, the account must be settled in that action.   In this court the condition of the assignee cannot be better than it would be at law in any mode he could take to recover what was due upon the assignment."

The reason of the rule being that because in a suit at law for the use of the assignee, upon the bond or covenant to collect the debt, a recovery cannot be had for a greater sum than is actually due from the mortgagor to the mortgagee, and, therefore, no more shall be recovered in equity, in an action to foreclose the mortgage; or that the parties, as to rights and remedies, shall stand upon the same footing in both courts; it follows, as a logical conclusion, that when the nature of the instrument evidencing the debt and the circumstances of the transfer are such, that in a suit at law upon it

against the mortgagor, the assignee can enforce its payment, regardless of any equities existing between the mortgagor and mortgagee, he should have the same rights and remedy in equity. The reason of the rule ceasing in the case of negotiable securities, transferred before maturity, and without notice, the rule also ceases. The debt is the principal thing, the mortgage the incident; the transfer of the debt carries with it the mortgage. It is the debt which gives character to the mortgage, and fixes the rights and remedies of the parties under it, and not the mortgage which determines the nature of the debt. It cannot be contended that the securing of a negotiable instrument by a mortgage, destroys its negotiable character. We are of opinion, therefore, that both principle and sound policy require that the rights and remedies of an assignee, under the mortgage, should be co-extensive with those which he has under the instrument securing the debt.

We have, thus far, treated the case as if there were substantial equities existing between the defendant Smith, and the mortgagor and mortgagee; but we do not thereby intend that it shall be understood that in our opinion there are any such equities. On the contrary, we are clearly of opinion that there are not. Smith being justly indebted to Bunster, and Bunster having in himself the legal title to a large quantity of Smith's lands, is directed by Smith, in order to secure such indebtedness, to execute and deliver the mortgages on the lands to Patten and others, and then to reconvey the lands to him, subject to the mortgages. Bunster does so. Shall Smith afterwards be permitted to repudiate the transaction, and insist that the mortgages are invalid in the hands of these mortgagees? We think not. He might, it is true, contest the fact of the *delivery* of the mortgages to Patten and the other mortgagees, for without delivery they could have no legal existence; but that fact being established against him, he can go no farther. As to him they were executed for a good

Croft vs. Bunster et al.

and valuable consideration, and if this suit had been commenced by Patten himself, Bunster waiving all objections, we do not see how he could insist on a want of consideration between Patten and Bunster as a defence. The payment of the mortgage to Patten, either by the redemption or sale of the mortgaged premises, would have cancelled so much of his indebtedness to Bunster; and it could make no difference to him whether Bunster realized the money himself, or permitted it to be used and appropriated by Patten. That was a matter with which he had no concern, and into which he could not inquire. Viewing the transaction and the position of the parties in the light in which the facts place them, Smith was virtually the mortgagor, Bunster the mortgagee, and Patten the assignee of the mortgage. Smith can no more inquire into the consideration between Patten and Bunster, than if such were the real position of the parties. No one will contend that in a suit by an assignee to foreclose a mortgage otherwise fair, that the mortgagor can set up as a distinct or substantive ground of defence, a want of consideration for the assignment as between assignee and mortgagee.

The judgment of the circuit court must be reversed and the cause remanded, with directions that judgment of foreclosure and sale be entered in accordance with the prayer of the complaint.