N. PATRICK CROOKS, J.
¶ 1. In 2009, Dow Family, LLC, (Dow) purchased a condominium located at unit four in the Island of Happy Days Condominiums. Unfortunately, the purchase did not result in happy days for Dow because PHH Mortgage Corporation (PHH) asserted that the condominium remained burdened by a mortgage after closing. Dow asks this court to find that the outstanding mortgage is unenforceable. Specifically, Dow argues that even if PHH can prove it holds the underlying note in question, it does not follow that PHH also holds the mortgage, which would give PHH the right to bring a foreclosure action in regard to the property to satisfy any outstanding debts.
¶ 2. At the time of purchase, Dow satisfied a mortgage from 2003. Before closing, Dow also inquired about another mortgage from 2001 that was listed on the title commitment. The sellers' attorney informed Dow that the 2001 mortgage was mistakenly listed on the title commitment. This information, however, was incorrect because the 2001 mortgage, purportedly owed to PHH, did exist and went unsatisfied at the time of closing.
¶ 3. Dow sought declaratory judgment that the 2001 mortgage did not constitute a lien on the property at the time of the 2009 sale. Dow's position is that the statute of frauds requires written documentation of mortgage assignments. Specifically, Dow asserts that PHH is unable to produce documentation indicating that the mortgage was assigned to PHH at the time of *800 closing. Therefore, Dow argues the 2001 mortgage was not an enforceable lien at the time it purchased the condominium in 2009. After PHH initiated a foreclosure action against Dow, the circuit court consolidated the two cases.
¶ 4. We are asked to determine whether PHH could properly enforce the 2001 mortgage at the time Dow purchased the property in 2009. PHH argues 1) that it received the applicable note by assignment in 2001, and 2) that it also held the mortgage at the time of the 2009 sale because, under the doctrine of equitable assignment, the mortgage follows the note. To evaluate PHH's argument we must determine whether the doctrine of equitable assignment exists in Wisconsin. We must then determine whether that doctrine exempts mortgage assignments from the statute of frauds.
¶ 5. We agree with the circuit court and the court of appeals that the doctrine of equitable assignment is alive and well in Wisconsin. The doctrine's existence is evidenced in our case law, and we are convinced that the case law we rely upon should not be distinguished or discredited due to its age or changes in banking practices. We further conclude that the language of Wis. Stat. § 409.203(7) (2011-12),[1] which governs liens securing the right to payment, codifies equitable assignment. Finally, the application of equitable assignment in this case results in no unfairness to Dow.
*801 ¶ 6. We further hold that the doctrine of equitable assignment does not conflict with the statute of frauds outlined in Wis. Stat. § 706.02. Equitable assignment occurs by operation of law, which satisfies Wis. Stat. § 706.001(2)(a),[2] a statutory exception to the statute of frauds.
¶ 7. Therefore, under the doctrine of equitable assignment, we hold that a mortgage automatically passes by operation of law upon the assignment of a mortgage note, which, as we noted above, satisfies a statutory exception to the statute of frauds. Accordingly, we affirm the court of appeals decision, which affirmed the circuit court, in part, reversed in part, and remanded the cause. Like both the circuit court and court of appeals, we conclude that the doctrine of equitable assignment applies and does not violate the statute of frauds; however, the issue of whether PHH has the necessary documents to enforce the note in question must be determined by the circuit court.
I. PROCEDURAL BACKGROUND
¶ 8. The circuit court ruled in favor of PHH and held that "there is no material issue of fact as to PHH holding the note and thereby getting the mortgage equitably assigned to them." This ruling from the bench by the Barron County Circuit Court, Honorable James D. Babbitt presiding, followed arguments on PHH's summary judgment motion. The circuit court held that the doctrine of equitable assignment is alive and well in Wisconsin and that PHH possessed the underlying note. Therefore, it concluded that under the doctrine of *802 equitable assignment, the 2001 mortgage was equitably assigned to PHH when it received the note in 2001. Because the 2001 mortgage remained unsatisfied at the time of the 2009 sale, foreclosure in favor of PHH was appropriate. Accordingly, the circuit court granted PHH's motion for summary judgment. The circuit court later issued its written findings of fact, conclusions of law, and judgment of foreclosure.
¶ 9. We now review a published court of appeals decision that affirmed the circuit court in part, reversed in part, and remanded for further proceedings. Dow Family, LLC v. PHH Mortg. Corp., 2013 WI App 114, ¶ 2, 350 Wis. 2d 411, 838 N.W.2d 119. The court of appeals, relying on Tidioute Sav. Bank v. Libbey, 101 Wis. 193, 77 N.W. 182 (1898), Tobin v. Tobin, 139 Wis. 494, 121 N.W. 144 (1909), Muldowney v. McCoy Hotel Co., 223 Wis. 62, 269 N.W. 655 (1936), and Wis. Stat. § 409.203(7), agreed with the circuit court that the doctrine of equitable assignment applies in Wisconsin. Dow Family, LLC, 350 Wis. 2d 411, ¶¶ 26-37. It further held that application of equitable assignment did not conflict with the statute of frauds outlined in Wis. Stat. § 706.02. Id., ¶ 38. It held that because the mortgage was equitably assigned to PHH by virtue of PHH holding the note, the transfer of the mortgage occurred by operation of law, which is an exception to the statute of frauds. Id.; see also Wis. Stat. § 706.02(2)(a).
¶ 10. The court of appeals, however, found that the circuit court erred in granting summary judgment to PHH because PHH failed to show that it could enforce the note. Dow Family, LLC, 350 Wis. 2d 411, ¶ 24. Specifically, the court of appeals concluded that PHH's documentation at summary judgment did not show that it held an authenticated copy of the note in *803 question. Id. Furthermore, the court of appeals held that PHH's arguments as to whether the note could be considered self-authenticating were undeveloped, and it declined to address those arguments. Id., ¶ 22. Therefore, the court of appeals reversed and remanded for trial on the issue of PHH's ability to enforce the note in question.[3] Id., ¶ 24.
¶ 11. Dow appeals, arguing that even if the doctrine of equitable assignment exists in Wisconsin, a point that it does not concede, the doctrine cannot serve as an exception to the statute of frauds, which it argues requires that mortgage assignments be done in writing. Dow further contends that because the statute of frauds cannot be overcome by the doctrine of equitable assignment, no enforceable lien existed when Dow purchased the condominium in question; therefore, Dow asserts that PHH cannot foreclose on the property.[4]
II. FACTUAL BACKGROUND
¶ 12. In 2001, U.S. Bank loaned William E. Sullivan and Jo Y. Sullivan $146,250. A note dated May 17, *804 2001, which lists U.S. Bank as the lender and the Sullivans as the borrowers evidences this transaction.
¶ 13. The 2001 note is secured by a mortgage on a condominium located at unit four, Island of Happy Days, Mikana, Wisconsin, in Barron County. The mortgage documentation is dated May 17, 2001, and explicitly references the above-described 2001 note. The mortgage lists the Sullivans as the borrower/mortgagor and U.S. Bank as the lender. The mortgage also lists the Mortgage Electronic Registration System (MERS)[5] as both the nominee for U.S. Bank and the mortgagee.[6] The mortgage was recorded with the Barron County Register of Deeds on June 22, 2001. PHH asserts that it received an assignment of the 2001 note shortly after it came into existence.[7]
*805 ¶ 14. In 2009, Dow purchased the condominium at issue[8] from the Sullivans. Prior to the purchase, Dow obtained a title commitment that indicated that the property in question was subject to the above-described 2001 mortgage as well as a 2003 mortgage in the amount of $140,000.[9] The title commitment documentation listed U.S. Bank as the lender for both the 2001 and 2003 mortgages.[10]
¶ 15. Prior to closing, Dow's attorney contacted the Sullivans' attorney to inquire about the 2001 mortgage. Email correspondence between the attorneys in *806 dicates that William Sullivan represented that the 2001 mortgage should no longer be on the title and that the 2001 mortgage was the same as the 2003 mortgage. Dow apparently relied on this information to conclude that the 2003 mortgage evidenced a refinancing of the note that underlay the 2001 mortgage. Closing documents reflect that Dow satisfied a single mortgage to U.S. Bank in the amount of $143,140.89.
¶ 16. On November 24, 2009, PHH's counsel informed Dow's attorney that the 2001 note, serviced by PHH, remained outstanding and delinquent and that PHH would commence a foreclosure action if necessary. On June 23, 2010, Dow filed suit against PHH and U.S. Bank seeking a declaratory judgment that it purchased the condominium free and clear of the 2001 mortgage. On August 9, 2010, PHH initiated a foreclosure action against Dow. On February 1, 2011, Dow and PHH stipulated to the consolidation of the two cases.
¶ 17. Questions about the assignment, location of, and authenticity of the 2001 note are not before this court. Instead, we are asked to determine whether the doctrine of equitable assignment applies in Wisconsin. We first consider this question before discussing whether the doctrine of equitable assignment constitutes an exception to the statute of frauds.
III. STANDARD OF REVIEW AND PRINCIPLES OF INTERPRETATION
¶ 18. Whether or not the doctrine of equitable assignment exists in Wisconsin is a question of law. This court reviews questions of law de novo. D.S.P v. State, 166 Wis. 2d 464, 471, 480 N.W.2d 234 (1992).
*807 ¶ 19. The question of whether the doctrine of equitable assignment violates the statute of frauds requires statutory interpretation. "Statutory interpretation is a question of law for our independent review; however, we benefit from the discussions of the court of appeals and the circuit court." Kroner v. Oneida Seven Generations Corp, 2012 WI 88, ¶ 78, 342 Wis. 2d 626, 819 N.W.2d 264.
¶ 20. When conducting statutory interpretation we first look to the plain language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We consider extrinsic sources to determine statutory meaning only when the plain language of the statute could reasonably be interpreted in more than one way. Id., ¶¶ 46-47.
IV ANALYSIS
A. EQUITABLE ASSIGNMENT
¶ 21. Under the doctrine of equitable assignment, the assignment of a mortgage note is automatically followed by the mortgage. Dow’s arguments regarding equitable assignment are intertwined with its arguments regarding the statute of frauds, which we address in turn. However, Dow specifically questions references to equitable assignment in Wisconsin's common law, which it asserts are outdated and distinguishable.
¶ 22. PHH counters that equitable assignment is alive in Wisconsin as evidenced by established case law. PHH also asserts that Wis. Stat. § 409.203(7) codifies *808 the doctrine of equitable assignment. Finally, PHH contends that the application of equitable assignment results in no unfairness to mortgagors.
¶ 23. We agree with both the circuit court and the court of appeals that the doctrine of equitable assignment is alive and well in Wisconsin. We also agree with the court of appeals' reliance on both case law and Wis. Stat. § 409.203(7) as evidence of the doctrine's existence and application in Wisconsin.
¶ 24. Evidence of the doctrine of equitable assignment exists in Wisconsin case law dating back to at least 1859. In Croft v. Bunster, 9 Wis. 503 (1859),[11] a case involving real estate transfers that were encumbered by mortgages, this court stated,
The debt is the principal thing, the mortgage the incident; the transfer of the debt carries with it the mortgage. It is the debt which gives character to the mortgage, and fixes the rights and remedies of the parties under it, and not the mortgage which determines the nature of the debt. It cannot be contended that the securing of a negotiable instrument by a mortgage, destroys its negotiable character. We are of opinion, therefore, that both principle and sound policy require that the rights and remedies of an assignee, under the mortgage, should be co-extensive with those which he has under the instrument securing the debt.
Croft, 9 Wis. at 511.[12] While the same party in Croft appears to have held both the mortgage and the note, *809 see id. at 506, this fact does not discredit the court's early recognition of the idea of equitable assignment.
¶ 25. In addition to Croft, Tidioute, 101 Wis. 193, Tobin, 139 Wis. 494, and Muldowney, 223 Wis. 62, support the existence and application of equitable assignment in Wisconsin, as the court of appeals recognized. See Dow Family, LLC, 350 Wis. 2d 411, ¶¶ 26-37. In Tidioute, Libbey, the defendant, secured two notes held by WT. Richards & Co., who later sold each note to a different bank. Tidioute, 101 Wis. at 193-95. "[N]o formal assignment of the defendants' guaranty was made in either case." Id. at 195. While the issue in this case specifically addressed the distinction between a general guaranty and a special guaranty to determine whether the defendant could be held accountable to the current holders of the notes in question, the case gives ample support for the doctrine of equitable assignment. The court stated,
A guaranty is defined to be "a separate, independent contract, by which the guarantor undertakes, for a valuable consideration, to be answerable for the payment of some particular debt, or future debts, or the performance of some duty, in case of the failure of another person primarily liable to pay or perform;" and it is said that such guaranty is assignable, with the obligation secured thereby, and that it goes with the principal obligation, and is enforceable by the same persons who can enforce that. The rule is that the transfer of a note carries with it all security without any formal assignment or delivery, or even mention of the latter.
Id. at 196 (citations omitted). The court further explained,
*810 The transfer of these notes to the plaintiffs carried with it, by operation of law, all securities for their payment. The debt is the principal thing, and the securities are only an incident. The transfer of the former, therefore, carries with it the right to the securities, and amounts to an equitable assignment of them. No matter what the form of the security is, whether a real-estate or chattel mortgage, or a pledge of collateral notes, bonds, or other personal property, the purchaser of the principal takes with it the right to resort to these securities; and this is so, although the assignment or transfer does not mention them.
Id. at 197 (emphasis added).
¶ 26. In Tobin, a father, Joseph Tobin, loaned money to a third party. Tobin, 139 Wis. at 494. Joseph named his son, John Tobin, in the note and mortgage related to this loan without informing John; Joseph continued to hold the note and recorded the mortgage. Id. at 494-95. Following John's death, Joseph petitioned the court to declare that John never had any interest in the note and mortgage. Id. at 495. John's widow later opposed the petition. Id. at 495-96. While no transfer of the note from Joseph to John occurred in this case, the court still stated the rule of equitable assignment in its discussion. Id. at 499. It stated, "A mortgage securing a promissory note passes as an incident upon transfer of the note." Id.
¶ 27. Finally, in Muldowney, Esther Muldowney loaned money to the McCoy Hotel Company (McCoy). Muldowney, 223 Wis. at 64. Muldowney held on to three of the notes that resulted from this loan and endorsed the remaining 12 notes. Id. Later, the Niagara Building Corporation (Niagara) purchased the remaining 12 notes from a third party. Id. McCoy defaulted on its loan and Niagara initiated a replevin action. Id. McCoy *811 argued "that the Niagara Building Corporation cannot maintain this action because no formal assignment of the mortgage or any interest therein was executed and delivered to it in connection with the transfer of the notes." Id. at 65. Although this case addressed a chattel mortgage, the court cited the general principle of equitable assignment in holding in favor of Niagara,
It is well established that, in the absence of an agreement to the contrary, the purchase of a note or debt secured by a mortgage carries with it the hen of the mortgage, because of which, in the absence of any formal assignment of the latter to the purchaser, he is considered the equitable owner thereof and of the security afforded thereby.
Id. at 65-66.
¶ 28. Dow argues that these cases, which each support the existence and application of equitable assignment of mortgages, are outdated and distinguishable. We recognize that the cases relied upon by PHH, the court of appeals, and now this court each deal with different issues and factual scenarios. However, we agree with the court of appeals that each case stands for "the general proposition that the security for a note is equitably assigned upon transfer of the note, without the need for a written assignment." Dow Family, LLC, 350 Wis. 2d 411, ¶ 34. Furthermore, references to equitable assignment principles in Croft are especially noteworthy as that case concerned mortgages on real estate. Likewise, in Tidioute, the court explicitly stated that equitable assignment applies to real estate mortgages.
¶ 29. We also note that the doctrine of equitable assignment is not unique to Wisconsin case law. In *812 Carpenter v. Longan, 83 U.S. 271, 275 (1872), the United States Supreme Court stated: "The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter." In the Restatement (Third) of Property (Mortgages) § 5.4(a) (1997) we find additional support for the doctrine of equitable assignment: "A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise."
¶ 30. Further, we agree with the court of appeals' reliance on Wis. Stat. § 409.203(7) and hold that § 409.203(7) codifies the doctrine of equitable assignment. Chapter 409 sets forth Wisconsin's adoption of the Uniform Commercial Code (UCC) governing secured transactions. Wisconsin Stat. § 409.203(7) is titled, "Lien securing right to payment," and it provides: "The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage, or other lien."
¶ 31. The parties disagree over the plain meaning of Wis. Stat. § 409.203(7). Dow argues that the statute "merely means that when a secured debt is itself assigned as a security to another, the original security interest accompanies the debt." In contrast, PHH argues that the language of § 409.203(7) codifies equitable assignment.
¶ 32. Like the court of appeals, we conclude that each party provides a reasonable interpretation of the plain language of § 409.203(7). Therefore, we must look outside of the plain language of the statute for additional clarification. See Kalal, 271 Wis. 2d 633, ¶ 50.
*813 ¶ 33. Wisconsin Stat. § 409.203(7) adopted the exact language from Section 9-203(g) of the UCC. Compare U.C.C. § 9-203 (2000), with Wis. Stat. § 409.203(7). The UCC comment to § 9-203(g) provides: "Subsection (g) codifies the common-law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien." U.C.C. § 9-203 cmt. 9 (2000). The language of the comment directly supports PHH's argument that § 409.203(7) codified equitable assignment.
¶ 34. Finally, the application of equitable assignment to this case results in no unfairness to Dow. Dow spends a considerable amount of time in its brief discussing MERS. In doing so, Dow cites to numerous authorities that have been highly critical of MERS practices. We recognize that MERS has been criticized; however, this case is not about MERS' practices and MERS is not a party to this case.
¶ 35. Instead, our decision today clarifies the existence and application of equitable assignment in Wisconsin. This clarification results in no unfairness to Dow. First, in general, equitable assignment does not require mortgagors to satisfy anything beyond their debt(s) and accompanying liens. In addition, specific to this case, Dow had notice of the 2001 mortgage prior to the 2009 sale. Here, the title commitment informed Dow of the outstanding 2001 mortgage. Dow apparently relied on information from the Sullivans and their attorney to conclude that the 2001 mortgage was listed on the title commitment in error. However, Dow had full opportunity to investigate the existence of the 2001 mortgage prior to the purchase.
*814 ¶ 36. Our determination that the doctrine of equitable assignment has long existed in Wisconsin, however, does not end our discussion. We next consider the heart of Dow's argument: whether the statute of frauds prevents the application of equitable assignment under these circumstances.
B. EQUITABLE ASSIGNMENT AND THE STATUTE OF FRAUDS
¶ 37. Generally speaking, the statute of frauds applies to real estate conveyances. It requires that "every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or equity" must be in writing. Wis. Stat. §§ 706.001, 706.02. Wisconsin Stat. § 706.001(2), however, provides several exceptions to the statute of frauds requirements outlined in Wis. Stat. § 706.02. One such exception includes "transactions which an interest in land is affected by act or operation of law." Wis. Stat. § 706.001(2)(a).
¶ 38. Dow argues that this exception does not exempt a mortgage assignment from the statute of frauds, which thus invalidates the doctrine of equitable assignment. Specifically, Dow argues that this court should adopt a definition of "by operation of law" that is similar to the definition relied upon by the Michigan Supreme Court in Kim v. JPMorgan Chase, N.A., 493 Mich. 98, 825 N.W.2d 329 (2012). The Michigan Supreme Court explained that "a transfer that takes place by operation of law is one that occurs unintentionally, involuntarily, or through no affirmative act of the transferee." Id. at 117. Under this definition, Dow argues that PHH's acquisition of the mortgage could *815 not have been by operation of law because it occurred intentionally through the assignment of the note.
¶ 39. PHH asks this court to hold that equitable assignment falls within the "by operation of law" exception found in Wis. Stat. § 706.001(2)(a).
¶ 40. We agree with PHH and hold that under the doctrine of equitable assignment a mortgage is automatically transferred by operation of law when the note is transferred. Therefore, we hold that the "by operation of law exception" found in Wis. Stat. § 706.001(2)(a) exempts the mortgage assignment at issue from the statute of frauds.
¶ 41. In reaching our conclusion, we first draw support from Tidioute. There this court stated, "The transfer of these notes to the plaintiffs carried with it, by operation of law, all securities for their payment." Tidioute, 101 Wis. at 197 (emphasis added). Although Tidioute does not explicitly address the statute of frauds, the statute of frauds existed at the time the case was decided.
¶ 42. Wisconsin Stat. ch. 104, § 2302 (1898) was in operation when this court decided Tidioute in 1898. Section 2302, titled "Conveyance of land, etc. to be in writing" provided:
No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing.
*816 The statute of frauds operating in 1898 contains substantially similar language to our current statute. Compare Wis. Stat. ch. 104, § 2302 (1898), with Wis. Stat. § 706.001(l)-(2).
¶ 43. Even earlier evidence exists that the statute of frauds was operating in the background of this court's statements in Tidioute and other early cases discussing equitable assignment. In Yates v. Martin, Justice Hubbell, writing in dissent, stated, "The statute of frauds of this state declares every contract for the sale of any interest in lands void, unless it is in writing . . . ." Yates v. Martin, 2 Pin. 171, 178 (Wis. Jan. 1849).
¶ 44. Furthermore, we are convinced that equitable assignment can be considered "under operation of law" under Dow's proposed definition of the phrase. Here, PHH allegedly obtained the note through assignment. PHH, however, took no action with regard to the mortgage itself because the mortgage automatically transferred upon the alleged assignment of the note. We consider the automatic nature of the mortgage following the note under equitable assignment to be "by operation of law."
V CONCLUSION
¶ 45. We agree with the circuit court and the court of appeals that the doctrine of equitable assignment is alive and well in Wisconsin. The doctrine's existence is evidenced in our case law, and we are convinced that the case law we rely upon should not be distinguished or discredited due to its age or changes in banking practices. We further conclude that the language of Wis. Stat. § 409.203(7), which governs liens securing the right to payment, codifies equitable assign *817 ment. Finally, the application of equitable assignment in this case results in no unfairness to Dow.
¶ 46. We further hold that the doctrine of equitable assignment does not conflict with the statute of frauds outlined in Wis. Stat. § 706.02. Equitable assignment occurs by operation of law, which satisfies Wis. Stat. § 706.001(2)(a), a statutory exception to the statute of frauds.
¶ 47. Therefore, under the doctrine of equitable assignment, we hold that a mortgage automatically passes by operation of law upon the assignment of a mortgage note, which, as we noted above, satisfies a statutory exception to the statute of frauds. Accordingly, we affirm the court of appeals decision, which affirmed the circuit court, in part, reversed in part, and remanded the cause. Like both the circuit court and court of appeals, we conclude that the doctrine of equitable assignment applies and does not violate the statute of frauds; however, the issue of whether PHH has the necessary documents to enforce the note in question was not appealed and must be determined by the circuit court.
By the Court. — The decision of the court of appeals is affirmed and cause remanded to the circuit court.
¶ 48. ANN WALSH BRADLEY, J., did not participate.

 All references to the Wisconsin statutes are to the 2011-12 version unless otherwise indicated. Wisconsin Stat. § 409.203(7) governs "Lien securing right to payment." It provides, "The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest, mortgage, or other lien." Wis. Stat. § 409.203(7).

 Wisconsin Stat. § 706.001(2)(a) excludes transfers of land from the statute of frauds when the land transaction occurs "[b]y act or operation of law."

 PHH did not appeal the portion of the court of appeals' decision that reversed the circuit court and remanded the cause. Therefore, the issue of whether PHH can produce and enforce an authenticated copy of the note in question is not before this court.

 If this court were to decide that the doctrine of equitable assignment does not apply, Dow asks this court to decide two additional issues. First, Dow asks the court to hold that it took the property in question free and clear of the 2001 mortgage. Second, Dow asks whether its good faith in purchasing the property is relevant to PHH's ability to foreclose on the property. Because we conclude that equitable assignment applies and is not in conflict with the statute of frauds, we do not address Dow's additional arguments.

 Generally speaking,
Mortgage Electronic Registration Systems, Inc., commonly known as MERS, is a corporation registered in Delaware and headquartered in the Virginia suburbs of Washington, D.C. MERS operates a computer database designed to track servicing and ownership rights of mortgage loans anywhere in the United States. Originators and secondary market players pay membership dues and per-transaction fees to MERS in exchange for the right to use and access MERS records.
Christopher L. Peterson, Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System, 78 U. Cin. L. Rev. 1359, 1361 (2010).

 It is unclear to us how MERS can act as both a nominee of U.S. Bank and as the mortgagee. See Peterson, supra note 5, at 1374-75 (explaining that MERS cannot act as "both an agent and a principal with respect to the same property right"). To resolve the narrow questions before us, we need not determine whether the dual role of MERS is proper.

 This court takes no position on whether PHH received an assignment of the note or whether PHH holds an authenticated copy of the note. However, the record contains a "notice of *805 assignment, sale, or transfer of servicing rights" signed by the Sullivans. The notice states, "You are hearby notified that the servicing of your mortgage loan ... is being assigned, sold or transferred from U.S. Bank, N.A. to PHH Mortgage Services, effective immediately following the closing of your loan." This notice is undated except for an electronic date stamp that appears to read May 11, 2001; therefore, the document may refer to the 2001 note.
The record also contains a copy of the 2001 note that includes an undated endorsement in blank to Cendant Mortgage Corporation, d/b/a PHH Mortgage Services Corporation. Finally, the record contains a copy of a letter dated November 24, 2009, which PHH's counsel sent to Dow's attorney. In regard to the 2001 note, the letter states,
A copy of the assignment of the Note and Mortgage from USBank to MERS has not yet been located. However, our records clearly evidence that the Note and Mortgage were assigned into MERS and are now owned by Fannie Mae. PHH has serviced the loan since 2001 in the name PHH Mortgage Corporation.

 Dow's purchase of the condominium was one part of a larger transaction; however, only the sale of unit four is at issue here.

 The title commitment also evidenced a third mortgage, which is not at issue.

 Dow asserts that the title commitment should have indicated that MERS was the mortgagee under the 2001 mortgage rather than U.S. Bank.

 Both WestLaw and Lexis use 9 Wis. 503 as the citation for Croft v. Bunster; however, the case appears at 9 Wis. 457 in the Wisconsin Reports, published by Callaghan & Company.

 Croft utilizes a lengthy quotation from Mathews v. Wallwyn, 4 Vesey 118 (1798), an English case. It appears to rely on Mathews as the origin of equitable assignment. However, the conclusion of this quotation is unclear as the Croft opinion fails to include closing quotation marks. Reference to the text of *809 Mathews v. Wallwyn itself confirms that the quotation we cite is from Croft and not from Mathews.