MULDOWNEY and another, Respondents, vs. McCOY HOTEL COMPANY, Appellant.

*October 14—November 10, 1936.*

*William E. Burke* of Milwaukee, for the appellant.
*Ben Z. Glass* of Milwaukee, for the respondents.

FRITZ, J.   The appellant, McCoy Hotel Company, relies upon several assignments of error.   The material facts will be stated in connection with each of appellant's contentions which it is necessary to pass upon.

The appellant's first contention is that Niagara Building Corporation is not entitled to replevin the mortgaged property because, at the time of the commencement of this action, it was not the holder of all of the unpaid notes secured by the mortgage upon which it bases its right to recover.   That mortgage was given by the defendant to Esther Muldowney on May 28, 1932, to secure seventeen negotiable notes, totaling $2,400.   Three of the notes were paid to her, and twelve, after indorsement by her, were acquired for value by the Niagara Building Corporation on March 1, 1933, from an intermediate holder.   Thereafter that corporation received payment from defendant for five of those notes and a part of the sixth, and $1,778.24 are still owing to the Niagara Building Corporation on the seven notes which it held on May 27, 1935.   As the civil court rightly found, upon the admissions on the trial by the Niagara Building Corporation's attorney, two of the notes are unaccounted for and the holder thereof is not represented in this action.   However, even though that corporation was not the owner of all the outstanding notes, if it acquired some interest in the mortgaged property as the transferee of some of those notes, then it held that interest as a tenant in common with the holder of the other notes, and as such tenant in common it was entitled, upon the mortgagor's default, to seize the

property or to recover possession thereof by replevin for the benefit of all of the holders of the notes. *Earll v. Stumpf,* 56 Wis. 50, 13 N. W. 701; *Emmons v. Dowe,* 2 Wis. *322; *Franke v. Neisler,* 97 Wis. 364, 72 N. W. 887; *Tidioute Savings Bank v. Libbey,* 101 Wis. 193, 77 N. W. 182.

It is true that compliance with sec. 260.12, Stats., requires that in such an action all parties "who are united in interest must be joined as plaintiffs or defendants," and that "if the consent of any one who should be joined as plaintiff cannot be obtained he may be made a defendant, the reason thereof being stated in the complaint." Such compliance was indicated at the commencement of this action by the fact that Esther Muldowney's name was included as a party plaintiff in the title of the action, and in this action a statement made by the attorney for the Niagara Building Corporation in his affidavit for the warrant of replevin indicated that she was a party plaintiff, and that he represented all named as plaintiffs. But his admission to the contrary at the trial disclosed that he was not authorized to include her as a party plaintiff. However, if under those circumstances there was in fact a defect of parties, that, as was held in *Franke v. Neisler, supra,* should not disquiet the mortgagor. It works no harm to him if the tenant in common must divide the results of his recovery of the mortgaged property with his cotenants.

The appellant further contends that the Niagara Building Corporation cannot maintain this action because no formal assignment of the mortgage or any interest therein was executed and delivered to it in connection with the transfer of the notes. It is well established that, in the absence of an agreement to the contrary, the purchase of a note or debt secured by a mortgage carries with it the lien of the mortgage, because of which, in the absence of any formal assignment of the latter to the purchaser, he is considered the equi-

table owner thereof and of the security afforded thereby. *Tidioute Savings Bank v. Libbey, supra; Emmons v. Dowe, supra; Croft v. Bunster,* 9 Wis. *503; *Rice v. Cribb,* 12 Wis. *179; *Woodruff v. King,* 47 Wis. 261, 2 N. W. 452; *Franke v. Neisler, supra.* However, there is a conflict in the authorities as to whether a purchaser of the secured indebtedness can recover under the mortgage in the absence of a formal assignment thereof. It is the rule in some jurisdictions that such purchaser is merely the equitable owner of the mortgage; that as such he is not entitled to maintain an action at law for the recovery or conversion of the mortgaged property; and that such an action can be maintained only in the name of the mortgagee. See 5 R. C. L. p. 442, § 75; p. 441, § 74; 11 C. J. p. 665, § 416. The decisions to that effect do not take into consideration such statutory provisions as we have in sec. 260.13, Stats., which provides that,—

"Every action must be prosecuted in the name of the real party in interest except as otherwise provided in section 260.15."

As the court said in *First Nat. Bank v. Ragsdale,* 158 Mo. 668, 59 S. W. 987,—

"But under our statute, section 540, Revised Statutes 1899, 'every action shall be prosecuted in the name of the real party in interest.' This section embraces as well rights of the character of these in question in this suit, as those under assignment of an ordinary chose in action. This doctrine was declared by our Kansas city court of appeals in a carefully considered opinion by PHILIPS, P. J.: *Kingsland v. Chrisman,* 28 Mo. App. 308. In that case after showing that the beneficial interest in the mortgage followed the assignment of the debt, and the assignee became the real party in interest, it was said: 'The spirit and object of the statute will be best expressed and executed by allowing this plaintiff to proceed in his own name, immediately, to enforce his possessory right under the mortgage, rather than to compel

him either to resort to the circumlocution of a bill in equity to compel an assignment of the legal title, or to bring replevin in the name of the mortgagee.' To the same effect also is *Willison v. Smith,* 52 Mo. App. 133."

See also *Green v. Powell* (Mo. App.), 46 S. W. (2d) 915. That is in accord with the decisions in this state in *Woodruff v. King, supra,* and *Tidioute Savings Bank v. Libbey, supra,* in which there was, however, no specific mention of sec. 260.13, Stats. In the latter case the court said,—

"No matter what the form of the security is, whether a real-estate or chattel mortgage, or a pledge of collateral notes, bonds, or other personal property, the purchaser of the principal takes with it the right to resort to these securities; and this is so, although the assignment or transfer does not mention them. The reason of this rule, within all the authorities, seems to be that when the mortgagee transfers the debt, without assigning the mortgage or other security, he becomes a trustee, and holds the security for the benefit of the owner of the note, and the latter may enforce the trust. The debtor is in no wise injured by such rule. He has agreed that the security shall stand for the payment of the debt, and it is of no consequence to him to whom it is paid."

It follows that the circuit court rightly held that, though it had no formal assignment of the mortgage, the Niagara Building Corporation was entitled to maintain an action of replevin.

Appellant further contends that the circuit court erred in holding that the civil court was in error in concluding that the contract on which the plaintiff corporation based its cause of action was void and unenforceable in this state under sec. 226.02 (9), Stats., because it was a foreign corporation, which had not been licensed, under sec. 226.02 (1), Stats., to do business here, and that therefore it could not acquire any right by virtue of that contract to any property

located here. It is undisputed that the notes secured by the mortgage in question, after indorsement by Esther Muldowney, were transferred and delivered in Illinois to the plaintiff corporation on March 1, 1933; and that it had not been licensed, under sec. 226.02 (1), Stats., to do business in Wisconsin, and had not filed a statement, under sub. (2) of that section. Appellant's counsel recognizes that prior to the amendment of that section by the enactment of a revisor's bill as ch. 97, Laws of 1931, the established rule was that a foreign corporation, which had not been licensed or had not filed a statement, under sec. 226.02, Stats., could nevertheless enforce in this state a mortgage on property located here, which it had lawfully taken in another state to secure a loan made there. *First State Bank v. Harrington,* 192 Wis. 293, 212 N. W. 665; *Bradt v. Beloit Dairy Co.* 201 Wis. 319, 230 N. W. 135; *Union Trust Co. of Maryland v. Rodeman,* 220 Wis. 453, 264 N. W. 508. Appellant claims, however, that that rule is no longer applicable to the contract by which the plaintiff corporation in 1933 acquired in Illinois the notes involved herein, because, as the result of the amendment of sec. 226.02 (2), Stats. 1929, by the enactment of ch. 97, Laws of 1931, the words "in this state" were deleted from the proviso in that sub. (2), Stats. 1929, which read:

"Provided, however, that any such corporation which shall hereafter transact *in this state* the business above provided for shall first file with the secretary of state a statement in writing. . . ."

In passing upon that claim, it must be noted at the outset that,—

"It is recognized that in the revision and codification of a law, good work on the part of the revisors calls for the elimination of redundant and immaterial matter. No legislative intent to change the law in this respect should be im-

puted if, by an examination of the remaining provisions of the law, the presence of those dropped out should appear to be without purpose." *State ex rel. Little Yellow D. Dist. v. Juneau County,* 199 Wis. 476, 479, 227 N. W. 12;—

and that,—

"It is well established that in cases of ambiguity arising from the enactment of a revisor's bill it will be presumed that there was no intention to work any radical change in the law." *Hillier v. Lake View Memorial Park,* 208 Wis. 614, 243 N. W. 406.

See also *Van Brunt v. Joint School Dist.* 185 Wis. 493, 201 N. W. 755; *Wisconsin Gas & E. Co. v. Fort Atkinson,* 193 Wis. 232, 245, 213 N. W. 873; *Oconto Co. v. Townsend,* 210 Wis. 85, 244 N. W. 761, 246 N. W. 410; *Wisconsin Power & Light Co. v. Beloit,* 215 Wis. 439, 254 N. W. 119; *Wisconsin Power & Light Co. v. Beloit,* 215 Wis. 454, 254 N. W. 126. However, regardless of that rule, appellant's claim cannot be sustained. After as well as before that deletion of the words "in this state," the filing prescribed by the proviso, in which they were embodied, was required only in respect to the transaction by an unlicensed foreign corporation of "the business above provided" (in sec. 226.02 (2), Stats.) ; and that meant and still means only a transaction in Wisconsin by the making of a loan of "money here." That constitutes the "business above provided" in sec. 226.02 (2), Stats. 1931. And by the use of the word "here" in the clause "loan money here" in the definition of the "business above provided" preceding that subdivision, the applicability of the subsequent proviso therein is clearly limited to the loaning of the money "in this state." Consequently, those words, as formerly embodied in the proviso after the word "transact," were superfluous, and their deletion by the revision and amendment in 1931 has not changed the meaning or application of sec. 226.02 (2), Stats. The decisions in

*First State Bank v. Harrington, supra,* and *Bradt v. Beloit Dairy Co., supra,* are still applicable when the business transacted elsewhere than in Wisconsin by a foreign corporation, and under and by virtue of which it seeks to recover in this state, was not the loaning of money here by it. Therefore, as the contract under which the plaintiff corporation acquired its rights to the notes and the mortgage and the property described therein, which are involved in this action, was neither a contract by which it loaned money here, nor a contract which was made in Wisconsin, it is valid and enforceable here.

Appellant also contends that the articles described in the circuit court judgment, holding that the plaintiff corporation was entitled to replevin them, were not identified as the articles which were covered by the chattel mortgage. By virtue of an express reference in the judgment, the recovery extended to all articles described in "Plaintiff's Exhibit 13" as follows:

"All goods, chattels and properties of every kind and nature located in the McCoy Hotel, at 624 North 3d street, in the city of Milwaukee, consisting principally of the following items of personal property, to wit: 94 beds, springs and mattresses; 86 writing desks; 89 dressers; 83 bed stands; 98 grip stands; 66 hall racks; 13 cots; 238 chairs; 5 davenports; 4 upholstered chairs; 3 high back chairs; 4 arm chairs; 8 desk chairs; 2 writing desks; 2 tables; 1 cigar case; 1 roll top desk; 1 safe; 2 floor lamps; 4 table lamps; 1 washer; 1 dryer; 1 extracter; 1 mangle; 170 sheets; 164 pillow cases; 70 spreads; 73 dresser scarfs; 200 face towels; 75 bath towels; 10 bath mats; 190 pillows; 133 blankets; 97 pads together with all other personal property of any kind or nature contained in said premises and used in the conduct of the hotel business of the said McCoy Hotel Company."

That Exhibit 13 was an inventory taken on the day before the trial on August 13, 1935, of all the personal property

which was then located in the McCoy Hotel, without taking into consideration whether the property, which was thus inventoried, was property which belonged to the Central Hotel Company on May 28, 1932, the date of the mortgage. That limitation should have been taken into consideration because the description in the mortgage reads:

"All goods, chattels and property of every kind and nature *belonging to said Central Hotel Company, as of the 14th day of September, 1931, or since acquired by it,* all of which was or *now is* located in the McCoy Hotel at number 624 N. Third Street, in the city of Milwaukee. The chief items of said goods, chattels and property are as follows: All of the property of every kind and nature belonging to said Central Hotel Company, said property consisting chiefly of 98 beds and mattresses; 94 dressers; 500 sheets; 1,000 pillows; 200 pillows; dressers; kitchen equipment; laundry equipment; linens; cash registers; fixtures; supplies; furniture; and all other personal property in said Hotel belonging to the Central Hotel Company."

It is obvious that under that description the mortgage coverage did not extend to any after-acquired property. On the contrary, that coverage was expressly limited to such property as belonged to the "Central Hotel Company as of the 14th day of September, 1931," or was "since acquired by it" up to the date of the mortgage (*i. e.,* May 28, 1932), and as was theretofore or on that date located in the McCoy Hotel. Under those circumstances, there should have been some competent proof that the articles inventoried in Exhibit 13 on August 12, 1935, were the identical articles which were described in and covered by the mortgage. In the absence of any proof to that effect, it cannot be assumed that all of the articles which were inventoried as on hand in the McCoy Hotel on August 13, 1935, which was over three years after the date of the mortgage, were the same articles that were covered thereby. The respondent contends that

such evidence was sufficiently supplied by a comparison of Exhibit 13 with the articles described in the mortgage. That cannot be considered sufficient in respect to articles subjected to such wear and tear in operating a hotel for three years, as pillows, sheets, towels, blankets, pads, and hotel supplies. Furthermore, several of the articles listed in Exhibit 13 were not of the kinds that were specifically mentioned in the mortgage; and, on the other hand, that instrument did not cover any after-acquired property. It follows that because of the absence of proof in those respects, the record as made in the civil court was incomplete and that as substantial justice could not be done and the rights of the parties otherwise observed and protected upon the reversal of the civil court's judgment, excepting by remitting the case to that court for a new trial, the circuit court in connection with reversing that judgment should have so remitted the case. (Sec. 2, ch. 399, Laws of 1935.)

*By the Court.*—Judgment reversed, and cause remanded to the circuit court with directions to enter an order reversing the judgment of the civil court and remitting the case to that court for a new trial.