Dow Family, LLC, Plaintiff-Appellant.†

v.

PHH Mortgage Corporation,
Defendant-Respondent,

U.S. Bank, N.A., Defendant.

Court of Appeals

*No. 2013AP221. Submitted on briefs June 25, 2013.
—Decided August 6, 2013.*

2013 WI App 114

(Also reported in 838 N.W.2d 119.)

† Petition for Review granted 12-16-13.

411

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Joe Thrasher* of *Thrasher, Pelish, Franti & Heaney, Ltd.*, Rice Lake.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Mary Sue Anderson* of *Mallery & Zimmerman, S.C.*, Wausau.

Before Hoover, P.J., Mangerson and Stark, JJ.

¶ 1. STARK, J. Dow Family, LLC, appeals a summary judgment of foreclosure entered in favor of PHH Mortgage Corporation. The circuit court concluded PHH's summary judgment submissions sufficiently established that it was entitled to foreclose a mortgage Dow's predecessors in title gave to another entity. On appeal, Dow argues PHH failed to make a prima facie case that it is entitled to enforce the note. Dow also contends there is no evidence the mortgage was validly assigned to PHH. Dow further asserts the circuit court erred by finding PHH did not need to prove a valid assignment of mortgage because, under the doctrine of equitable assignment, the mortgage was automatically assigned to PHH when PHH became the holder of the note. Finally, Dow argues the mortgage was unenforceable when Dow purchased the subject property because the note and mortgage were not held by the same entity at that time. Dow therefore asserts that, even if the mortgage is now enforceable, it cannot take priority over Dow's interest in the property.

¶ 2. We conclude the circuit court erred by granting PHH summary judgment because PHH failed to make a prima facie case that it is entitled to enforce the note. We therefore reverse and remand for a trial on that issue. However, we agree with the circuit court that, if PHH can show it is entitled to enforce the note, it is also entitled to enforce the mortgage under the doctrine of equitable assignment. It is therefore irrelevant whether Dow can prove a valid, written assign-

ment of mortgage. In addition, we reject Dow's argument that the mortgage cannot be enforced because it was unenforceable when Dow purchased the property. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

¶ 3. On May 17, 2001, William and Jo Sullivan issued a note to "U.S. Bank, National Association," in the sum of $146,250. The note was secured by a mortgage on a condominium in Barron County. The mortgage listed Mortgage Electronic Registration Systems, Inc., (MERS)[1] as the mortgagee. The mortgage was recorded on June 22, 2001.

¶ 4. In 2009, the Sullivans accepted Dow's offer to purchase the condominium. Dow's attorney obtained a title commitment, which showed two mortgages to U.S.

---

[1] MERS is an electronic registration system for mortgages. Brett J. Natarelli & James M. Golden, *The End of the Beginning in the Battle Over MERS,* 65 CONSUMER FIN. L.Q. REP. 400, 401 (2011).

> "MERS does not originate, lend, service, or invest in home mortgage loans. Instead, MERS acts as the nominal mortgagee for the loans owned by its members." Either at origination or by later assignment, MERS, as nominee for a lender, will become the mortgagee of record. This allows the right to payment under the promissory note to be transferred among MERS members, which include many lenders, other financial institutions, and servicers, while the transfers are electronically tracked by MERS.

*Id.* (footnotes omitted). Under the MERS system, the mortgage itself is recorded, but subsequent assignments of the mortgage between MERS members are usually not. *Id.* Instead, MERS "tracks such assignments, obviating the need" to record them. *Id.* MERS therefore provides "an alternative to the county land records as a system for tracking subsequent assignments of the loan[.]" *Id.* (emphasis omitted).

415

Bank: the 2001 mortgage, and a 2003 mortgage in the sum of $140,000.[2] When Dow's attorney e-mailed counsel for the Sullivans to ask about the mortgages, he was informed that "the US Bank mortgage originated in 2001 (original amount $146,250) should no longer be on the title and is the same mortgage listed . . . from 2003 (original amount $140,000)." Dow took this to mean that the 2003 mortgage "was a refinance of the 2001 mortgage." Dow was apparently satisfied with this explanation, and the transaction closed on May 20, 2009. The closing statement shows that a single mortgage to U.S. Bank in the amount of $143,140.89 was satisfied at closing.

¶ 5. On November 24, 2009, Kristina Larese, inhouse counsel for PHH, wrote to Dow's attorney asserting that the 2001 mortgage "remain[ed] of record because the Note was not paid in full." Larese stated the loan was delinquent, and PHH would initiate foreclosure proceedings if Dow did not take steps to resolve the matter. She further stated:

> A copy of the assignment of the Note and Mortgage from US Bank to MERS has not yet been located. However, our records clearly evidence that the Note and Mortgage were assigned into MERS and are now owned by Fannie Mae. PHH has serviced the loan since 2001 in the name PHH Mortgage Corporation.

¶ 6. Dow filed a lawsuit against PHH on June 23, 2010, seeking a declaratory judgment that the 2001 mortgage "no longer constitutes a lien on the propert[y]." PHH filed a separate lawsuit on August 9, 2010, seeking a foreclosure judgment. The two lawsuits were consolidated on February 1, 2011.

---

[2] The title commitment also showed a third mortgage to a different bank, which is not relevant to this appeal.

¶ 7. PHH's complaint alleged it was "the current holder of a certain note and recorded mortgage on real estate located in this county," and that true copies of the note and mortgage were attached to the complaint. The attached copy of the note listed U.S. Bank as the lender and William and Jo Sullivan as the borrowers. It did not contain any endorsements. PHH first produced an endorsed copy of the note on September 26, 2011. That copy bore two undated endorsements: an endorsement from U.S. Bank to "Cendant Mortgage Corporation d/b/a PHH Mortgage Services Corporation," and an endorsement in blank by Cendant.

¶ 8. The copy of the mortgage attached to PHH's complaint listed MERS as the mortgagee and the Sullivans as the borrowers. No assignment of mortgage was attached to the complaint. The complaint did not allege the existence of any assignment.

¶ 9. PHH subsequently moved for summary judgment. In support of its motion, it offered the affidavit of its attorney, Patricia Lonzo. Lonzo averred that "what appear to be the original note and mortgage have been received by my office from [PHH]."

¶ 10. Attached to Lonzo's affidavit was the affidavit of Robin Callahan, a "custodian of the business records" for PHH. Callahan averred:

> I have possession, control, and responsibility for the accounting and other mortgage loan records relating to the defendant's mortgage loan which are created and kept and maintained in the ordinary course of business as a regular business practice and are prepared at or near the time of the transaction or event by a person with knowledge and that I make this affidavit from my personal inspection of said records and from my own personal knowledge of how these records are created and kept and maintained.

417

Callahan further averred that PHH "is the current holder of said note and mortgage." A copy of the note, bearing the two endorsements discussed above, was attached to Callahan's affidavit. A copy of the mortgage was also attached, along with a copy of an assignment of mortgage from MERS to PHH. The assignment of mortgage was dated April 13, 2010 and recorded September 1, 2010.

¶ 11. Dow opposed summary judgment, arguing PHH had not made a prima facie case that it was entitled to enforce the mortgage because neither the endorsed copy of the note nor the purported assignment of mortgage would be admissible in evidence. Dow also contended that, because the note and mortgage were held by separate entities when Dow purchased the property, the mortgage was unenforceable at that time. Dow therefore argued there was "no lien to take priority over the fee simple interest acquired by Dow[.]"

¶ 12. The circuit court rejected Dow's arguments and granted PHH summary judgment. Regarding the note, the court concluded there was "no material issue of fact as to PHH holding the note[.]" The court stated, "[T]he affidavits adequately support the travels of that note and who endorsed it and who had authority to endorse it[.]" As for the mortgage, the court did not specifically determine whether the purported assignment of mortgage from MERS to PHH would be admissible in evidence. Instead, the court concluded PHH did not need to prove a written assignment of mortgage because the mortgage was equitably assigned to PHH when PHH became the holder of the note. In addition, the court implicitly rejected Dow's argument that the mortgage was unenforceable because the note and mortgage were held by separate entities when Dow purchased

the property. The court entered a foreclosure judgment in favor of PHH, and Dow now appeals.

## DISCUSSION

¶ 13. We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).[3] Where, as here, it is undisputed that the complaint states a claim for relief, we begin by examining the moving party's affidavits to determine whether that party has made a prima facie case for summary judgment. *See Gross v. Woodman's Food Mkt., Inc.*, 2002 WI App 295, ¶ 30, 259 Wis. 2d 181, 655 N.W.2d 718. If so, we examine the opposing party's submissions to determine whether there are material facts in dispute that entitle the opposing party to a trial. *Id.*

¶ 14. Dow raises several challenges to the circuit court's summary judgment ruling. We first address Dow's argument that PHH failed to make a prima facie case that it is entitled to enforce the note. We then turn to Dow's argument that PHH failed to make a prima facie case that it was assigned the mortgage, and Dow's related argument that the doctrine of equitable assignment does not relieve PHH from proving a valid assignment. Finally, we consider Dow's argument that the mortgage is unenforceable because the note and mortgage were not held by the same entity when Dow purchased the property.

---

[3] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

## I. The note

■

¶ 15. "[A] mortgage cannot exist without a debt." *Mitchell Bank v. Schanke*, 2004 WI 13, ¶ 32, 268 Wis. 2d 571, 676 N.W.2d 849. As a result, in order to prevail on a foreclosure claim, a mortgagee must first prove it has the right to enforce the note. *See PNC Bank, N.A. v. Bierbrauer*, 2013 WI App 11, ¶ 10, 346 Wis. 2d 1, 827 N.W.2d 124.

■

¶ 16. PHH contends it made a prima facie case that it is entitled to enforce the note by establishing that: (1) it is in possession of the note; and (2) the note is endorsed in blank. In support of its argument, PHH relies on the copy of the note submitted with its summary judgment materials, which bore two endorsements: a special endorsement from U.S. Bank to "Cendant Mortgage Corporation d/b/a PHH Mortgage Services Corporation," and an endorsement in blank by Cendant. PHH correctly observes that, if an instrument is endorsed in blank, it becomes payable to the bearer[4] and may be negotiated by transfer of possession alone. *See* Wis. Stat. § 403.205(2). Consequently, PHH argues that "the moment [it] took physical possession of the Note endorsed in blank, it became the bearer of the Note, the holder[5] of the Note, and was entitled to enforce the Note."

---

[4] "Bearer" means "a person . . . in possession of an instrument . . . payable to bearer or endorsed in blank." Wis. Stat. § 401.201(2)(cm).

[5] "Holder" means "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Wis. Stat. § 401.201(2)(km)1.

¶ 17. Dow does not dispute that a note endorsed in blank may be enforced by the party in possession. Instead, Dow contends PHH's summary judgment submissions do not establish that PHH is actually in possession of the original note.[6] Specifically, Dow contends the copy of the note that PHH submitted on summary judgment would not be admissible in evidence to prove that PHH possesses the original note.

██

¶ 18. "Affidavits in support of or opposition to summary judgment 'shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence.' " *Gross*, 259 Wis. 2d 181, ¶ 31 (quoting WIS. STAT. § 802.08(3)). The party producing the evidence must make a prima facie showing that the evidence would be admissible. *Id.* "The burden then shifts to the opposing party to show that the evidence is inadmissible or to show facts which put the evidence at issue." *Id.*

¶ 19. Dow asserts the copy of the note PHH submitted on summary judgment is inadmissible because it is hearsay and is not subject to the hearsay exception for records of regularly conducted activity. *See* WIS. STAT. § 908.03(6). We disagree. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to

---

[6] Dow argues that, because a note endorsed in blank can be negotiated by transfer of possession alone and is payable to the bearer, it is "the next best thing to cash." Dow therefore contends "it is absolutely essential that the original either be presented [in court] or accounted for in some statutorily authorized manner." PHH does not dispute that it had to prove it possessed the original note, as opposed to a copy. Arguments not refuted are deemed conceded. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (1979).

421

prove the truth of the matter asserted." Wis. Stat. § 908.01(3). Here, PHH did not offer the copy of the note to prove the truth of the matter asserted. Instead, it offered the copy of the note as evidence of a legal act. *See Bank of America NA v. Neis*, 2013 WI App 89, ¶ 49, 349 Wis. 2d 461, 835 N.W.2d 527 (holding that "contracts, including promissory notes, are not hearsay when they are offered only for their legal effect, not "to prove the truth of the matter asserted"). Accordingly, the copy of the note is not inadmissible on hearsay grounds. *See id.*, ¶¶ 49–50.

¶ 20. Nevertheless, we conclude for other reasons that the copy of the note would not be admissible in evidence. Under Wis. Stat. § 909.01, a document must be authenticated in order to be admissible. This requirement is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Wis. Stat. § 909.01. PHH has not submitted evidence sufficient to support a finding that the copy of the note is what PHH claims—namely, a true and correct copy of an original note in PHH's possession.

¶ 21. The testimony of a witness "with knowledge that a matter is what it is claimed to be" is one means of authenticating evidence. Wis. Stat. § 909.015(1). On summary judgment, PHH did not submit the affidavit of any witness who claimed to have personal knowledge that PHH was in possession of the original note or that the copy of the note PHH submitted was a true and correct copy of the original. Patricia Lonzo, PHH's attorney, merely averred that her office had received "what *appear* to be the original note and mortgage[.]" (Emphasis added.) Her affidavit did not set forth any further support for that assertion. She did not explain

the basis for her conclusion that the note "appear[ed]" to be the original, nor did she aver that she is an expert in the examination of questioned documents. Furthermore, Lonzo did not aver that the copy of the note PHH submitted on summary judgment was a true and correct copy of the original. In addition, while Robin Callahan averred that he was a "custodian of the business records" for PHH, that he had "personal knowledge of how these records are created and kept and maintained," and that PHH is "the current holder of said note," he did not aver that PHH was in possession of the original note or that the copy of the note was a true and correct copy. Consequently, neither Lonzo's nor Callahan's affidavit is sufficient to authenticate the copy of the note.

¶ 22. PHH contends it did not need to rely on witness testimony to authenticate the copy of the note because a note is commercial paper and is therefore self-authenticating under Wis. Stat. § 909.02(9). Section 909.02(9) provides that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [c]ommercial paper, signatures thereon, and documents relating thereto to the extent provided by chs. 401 to 411." PHH does not explain the extent to which a copy of a note is self-authenticating under Wis. Stat. chs. 401 to 411. PHH's argument on this point is therefore undeveloped, and we decline to address it.[7] *See M.C.I., Inc. v. Elbin*, 146

---

[7] In another section of its brief, PHH cites Wis. Stat. § 403.308(1), which states that the signatures on a note are "presumed to be authentic and authorized[.]" PHH therefore contends we must presume that the signatures of the parties who signed the two endorsements are authentic and that the signers had authority to make the endorsements. PHH does not explain, however, how presuming the authenticity and authority of these signatures establishes that the copy of the note PHH submitted

Wis. 2d 239, 244–45, 430 N.W.2d 366 (Ct. App. 1988) (court of appeals need not address undeveloped arguments).

¶ 23. Moreover, additional circumstances militate against a finding that the copy of the note PHH submitted is a true and accurate copy of an original note in PHH's possession. As Dow points out, as of November 24, 2009, the original note's whereabouts were unknown to PHH's in-house counsel.[8] In addition, PHH's attorney asserted in November 2009 that Fannie Mae "owned" the note and that PHH merely "serviced" the loan. PHH later asserted that it funded the loan on May 18, 2001, and Fannie Mae funded the loan thirteen days later. These facts suggest the possibility that Fannie Mae, not PHH, is actually in possession of the original note.[9] Further, in August 2010, PHH attached what it alleged was a "true copy" of the note to its

is a true and correct copy of an original note in PHH's possession.

[8] To be precise, the November 24, 2009 letter from PHH's in-house counsel stated, "[A] copy of the assignment of the Note and Mortgage from USBank to MERS has not yet been located." However, Dow argues, "The only 'assignment' of the note consists of the purported endorsements on its face. No separate document assigning the note has ever been alleged. We interpret counsel's letter, then, as meaning the location of the note itself was unknown as of November 24, 2009." PHH does not dispute Dow's interpretation of the November 24, 2009 letter. We therefore accept Dow's interpretation for purposes of this appeal. *See Charolais Breeding Ranches*, 90 Wis. 2d at 109.

[9] We acknowledge that, even if Fannie Mae actually owns the note, PHH would still be entitled to enforce the note if it were in possession of the note and if the note were endorsed in blank. *See* Wis. Stat. § 403.205(2) (instrument endorsed in blank is payable to bearer); Wis. Stat. § 403.301 ("A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."). We merely conclude the facts

complaint, but that copy did not bear any endorsements. PHH's failure to attach an endorsed copy of the note to its complaint calls into question the authenticity of the endorsed copy PHH ultimately produced.

¶ 24. Based on the foregoing facts, we conclude PHH has not sufficiently authenticated the copy of the note it submitted on summary judgment. There are simply too many questions surrounding the document PHH submitted for us to conclude it is a true and correct copy of an original note in PHH's possession. As a result, PHH has not made a prima facie showing that the copy of the note would be admissible in evidence. *See Gross*, 259 Wis. 2d 181, ¶ 31. Without the original note, or a properly authenticated copy, there is no factual showing that PHH is entitled to enforce the note as the party in possession of a note endorsed in blank. Consequently, PHH has failed to make a prima facie case for summary judgment. We therefore reverse the grant of summary judgment in PHH's favor and remand for a trial on the issue of whether PHH is entitled to enforce the note.

## II. The assignment of mortgage

██

¶ 25. Dow also contends PHH was not entitled to summary judgment because it failed to establish that it received the right to enforce the mortgage via a valid, written assignment. Dow argues the document purporting to assign the mortgage from MERS to PHH would not be admissible in evidence. On appeal, PHH does not contend that the purported assignment would be admissible. Instead, PHH contends the circuit court prop-

---

relating to Fannie Mae further call into question whether PHH actually possesses the original note.

erly ruled that PHH did not need to prove a written assignment of mortgage because, under the doctrine of equitable assignment, the mortgage was automatically assigned to PHH when PHH became the holder of the note. In response, Dow argues the doctrine of equitable assignment cannot apply to real estate mortgages because the statute of frauds requires that every assignment of a real estate mortgage be in writing, signed, and delivered. *See* WIS. STAT. § 706.02(1).

¶ 26. We agree with PHH that the doctrine of equitable assignment applies in this case, and, consequently, PHH did not need to prove a written assignment of mortgage. PHH cites three cases in support of its argument. *See Tidioute Sav. Bank v. Libbey*, 101 Wis. 193, 77 N.W. 182 (1898); *Tobin v. Tobin*, 139 Wis. 494, 121 N.W. 144 (1909); *Muldowney v. McCoy Hotel Co.*, 223 Wis. 62, 269 N.W. 655 (1936). While these cases are, admittedly, quite old, they are still good law and do not conflict with WIS. STAT. § 706.02(1). Moreover, although Dow correctly observes that the facts of these cases differ from the instant case, each case clearly sets forth the broad proposition that the transfer of a note automatically transfers the security for the note, without the need for a written assignment. We reject Dow's argument that this proposition can be limited to cases that do not involve real estate mortgages.

¶ 27. In *Tidioute*, 101 Wis. 193, the first case cited by PHH, the defendants personally guaranteed the payment of two notes. *Id.* at 193–95. The holder of the notes, W. T. Rickards & Co., sold them to two different banks, "and no formal assignment of the defendants' guaranty was made in either case." *Id.* at 194–95. The issue on appeal was whether the defendants "[were] liable on said guaranty to the present holders of said notes." *Id.* at 195. The supreme court held that the

defendants were liable because "[t]he rule is that the transfer of a note carries with it *all security without any formal assignment or delivery, or even mention of the latter.*" *Id.* at 196 (emphasis added). The court explained:

> The transfer of these notes to the plaintiffs carried with it, by operation of law, *all securities* for their payment. The debt is the principal thing, and the securities are only an incident. The transfer of the former, therefore, carries with it the right to the securities, and amounts to an equitable assignment of them. *No matter what the form of the security is,* whether a *real-estate or chattel mortgage,* or a pledge of collateral notes, bonds, or other personal property, *the purchaser of the principal takes with it the right to resort to these securities;* and this is so, although the assignment or transfer does not mention them.

*Id.* at 197 (emphasis added).

¶ 28. *Tidioute* therefore stands for the proposition that, when a note is transferred, any security for the note is automatically transferred to the new note holder, without the need for a written assignment. Dow argues *Tidioute* is inapplicable because it dealt with personal guaranties, not real estate mortgages. However, the *Tidioute* court clearly contemplated that the rule it articulated would apply to all forms of security. *Id.* In addition, the court explicitly stated that real estate mortgages could be equitably assigned. *Id.*[10]

[10] We observe that the United States Bankruptcy Court for the Eastern District of Wisconsin has cited *Tidioute Savings Bank v. Libbey,* 101 Wis. 193, 77 N.W. 182 (1898), in two recent decisions. *See Rinaldi v. HSBC Bank USA, N.A.,* 2013 WL 655514 at *9 (Bankr. E.D. Wis. Feb. 22, 2013); *Edwards v. Deutsche Bank Nat'l Trust Co.,* 2011 WL 6754073 at *7–*8 (Bankr. E.D. Wis. Dec. 23, 2011). In both cases, the court relied

¶ 29. In *Tobin,* 139 Wis. 494, the next case cited by PHH, Joseph Tobin made a loan to a third party and obtained a note and mortgage securing the debt. *Id.* at 494–95. For unknown reasons, Joseph "caused the note and mortgage to be made to John Tobin, his son[,]" without John's knowledge. *Id.* at 495. After John died, Joseph asked the county court to assign the note and mortgage to him. John's widow opposed Joseph's petition. *Id.* at 495–96. In support of her argument, she cited Wis. Stat. § 2077 (1898), which read:

> When a grant for a valuable consideration shall be made to one person and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment is made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section.

*Tobin,* 139 Wis. at 498.

¶ 30. The primary issue on appeal was whether a note secured by a mortgage qualified as a "grant" under Wis. Stat. § 2077 (1898). The court held that it did not because § 2077 applied only to absolute grants of title to real estate. *Tobin,* 139 Wis. at 499. Because the note and mortgage were personal property, and were not absolute grants of title, the statute did not apply to them. *Id.* In reaching this conclusion, the court observed that "[a] mortgage securing a promissory note passes as an incident upon transfer of the note." *Id.*

¶ 31. As Dow points out, *Tobin* dealt with a different legal issue from the one presented by this appeal. However, in reaching its conclusion, the *Tobin* court relied on the general proposition that a mortgage is

on *Tidioute* for the proposition that a real estate mortgage is equitably assigned upon transfer of the associated note.

automatically transferred upon transfer of the note it secures. Dow seems to suggest that the *Tobin* court's statement about the doctrine of equitable assignment is dicta. However, this court may not dismiss as dicta statements from a supreme court opinion. *See Zarder v. Humana Ins. Co.*, 2010 WI 35, ¶ 58, 324 Wis. 2d 325, 782 N.W.2d 682.

¶ 32. The final case PHH cites in support of its equitable assignment argument is *Muldowney*, 223 Wis. 62. There, Esther Muldowney loaned money to the McCoy Hotel Company in exchange for seventeen notes which were secured by a chattel mortgage. *Id.* at 64. Muldowney endorsed twelve of the notes, which were eventually purchased by the Niagara Building Corporation. *Id.* After McCoy failed to pay the notes' full balance, Niagara commenced a replevin action. *Id.* at 63. On appeal, McCoy argued Niagara could not enforce the chattel mortgage because the mortgage was never formally assigned to Niagara. *Id.* at 65. The court rejected this argument, concluding Niagara could maintain a replevin action "though it had no formal assignment of the mortgage." *Id.* at 67. The court reasoned:

> It is well established that, in the absence of an agreement to the contrary, the purchase of a note or debt secured by a mortgage carries with it the lien of the mortgage, because of which, in the absence of any formal assignment of the latter to the purchaser, he is considered the equitable owner thereof and of the security afforded thereby.

*Id.* at 65.

¶ 33. Dow argues *Muldowney* is inapplicable because it involved a chattel mortgage, instead of a real estate mortgage. Dow contends, "Whatever the status of Wisconsin's real estate statute of frauds was in 1936, it certainly did not pertain to chattel mortgages." While

Dow may be correct, the *Muldowney* court clearly relied on the general proposition that "a mortgage" is transferred upon transfer of the associated note. *Id.* The court did not limit its holding to chattel mortgages.

¶ 34. Thus, while factually distinguishable to some extent, *Tidioute*, *Tobin*, and *Muldowney* all set forth the general proposition that the security for a note is equitably assigned upon transfer of the note, without the need for a written assignment. Moreover, *Tidioute* explicitly states that this proposition applies to real estate mortgages. *Tidioute*, 101 Wis. at 197. These cases therefore support PHH's argument that, as long as PHH proved its right to enforce the note, it did not need to prove a valid, written assignment of the mortgage.

¶ 35. In addition, we agree with PHH that Wis. Stat. § 409.203(7) further supports applying the doctrine of equitable assignment in this case. Section 409.203(7), which is located in the chapter of Wisconsin's Uniform Commercial Code covering secured transactions, states, "The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage, or other lien." PHH argues this language codifies the common law principle that a mortgage is equitably assigned upon transfer of the associated note. In contrast, Dow argues § 409.203(7) "merely provides that when a secured debt is itself assigned as security to another, the original security interest accompanies the debt."

■■■

¶ 36. Statutory interpretation presents a question of law that we review independently. *State v. Arends*, 2010 WI 46, ¶ 13, 325 Wis. 2d 1, 784 N.W.2d 513. Our analysis begins with the language of the statute. *State ex*

*rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the statutory language is clear and unambiguous, we simply apply the language as written. *Id.*, ¶ 46. However, if the statute is ambiguous, we examine extrinsic sources, such as legislative history, to ascertain the legislature's intent. *Id.*, ¶¶ 50–51. A statute is ambiguous if the statutory language reasonably gives rise to two or more different meanings. *Id.*, ¶ 47.

¶ 37. The language of Wis. Stat. § 409.203(7) reasonably supports both Dow's and PHH's interpretations.[11] We therefore look to extrinsic sources to determine the statute's meaning. Section § 409.203(7) is identical to § 9–203(g) of the Uniform Commercial Code. The comment to § 9–203(g) states, "Subsection (g) codifies the common-law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien."[12] U.C.C. § 9–203 cmt. 9. This supports PHH's assertion that § 409.203(7) was intended to codify the common law doctrine of equitable assignment. It also supports PHH's argument that the doctrine applies to real estate mortgages.

¶ 38. Dow argues the doctrine of equitable assignment cannot apply to real estate mortgages because the statute of frauds requires that every assignment of a

---

[11] The parties have not cited, and we have not been able to locate, any case interpreting Wis. Stat. § 409.203(7).

[12] Comment 9 also includes a citation to section 5.4(a) of the Restatement (Third) of Property: Mortgages (1997). *See* U.C.C. § 9–203 cmt. 9. Section 5.4(a) states, "A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise." The illustrations to comment b. make it clear that § 5.4(a) applies to real estate mortgages. *See* Restatement, *supra,* § 5.4(a) cmt. b, illus. 1–3.

real estate mortgage be in writing, signed, and delivered. *See* Wis. Stat. § 706.02(1). Dow is correct that Wis. Stat. ch. 706 governs every transaction by which any interest in land is mortgaged. *See* Wis. Stat. § 706.001(1). However, excluded from operation of that chapter are transactions in which an interest in land is affected by act or operation of law. *See* Wis. Stat. § 706.001(2). As discussed above, the mortgage here was equitably assigned to the holder of the original note by operation of law. Therefore, equitable assignment of the mortgage is not barred by the statute of frauds.

¶ 39. Based on Wis. Stat. § 409.203(7), and on the cases discussed above, we conclude the doctrine of equitable assignment applies in this case. Thus, if PHH can prove on remand that it is entitled to enforce the note, it need not prove a valid, written assignment of mortgage because the mortgage would have been automatically assigned to PHH upon transfer of the note. We therefore affirm that portion of the circuit court's decision applying the doctrine of equitable assignment and holding that PHH did not need to prove a written assignment of mortgage.

### III. Enforceability of the mortgage when Dow purchased the property

¶ 40. It is undisputed that, to foreclose a mortgage, a party must establish it has the right to enforce both the mortgage and the associated note. *See Mitchell Bank*, 268 Wis. 2d 571, ¶ 32; *PNC Bank*, 346 Wis. 2d 1, ¶ 13. Dow contends no party could make that showing when Dow purchased the property because the mortgage was held by MERS, but the note was held by some

other entity.[13] Dow therefore argues the mortgage was unenforceable when it purchased the property and, consequently, it obtained clear title. Dow asserts that, "at the most, [an enforceable mortgage] popped into existence in 2010" when the mortgage was purportedly assigned to PHH. However, Dow argues that, even if valid, the 2010 assignment should not be given retroactive effect to the time Dow purchased the property.

¶ 41. Dow's argument fails because we have already determined that a mortgage is equitably assigned upon transfer of the associated note, without the need for a written assignment. Thus, no matter which entity actually held the note at the time Dow purchased the property, that entity automatically obtained the mortgage when it obtained the right to enforce the note. Consequently, when Dow purchased the property, a single entity had the right to enforce both the note and the mortgage. As a result, Dow did not obtain clear title to the property. Instead, Dow took the property subject to an enforceable mortgage.

¶ 42. Dow spends a significant portion of its appellate brief criticizing MERS and its practice of transferring mortgages between its members without recording written assignments. Quoting from a recent article, Dow argues that MERS "obscures from borrowers the transfer history of their mortgages" and "insures that borrowers know nothing about the holder of their mortgage beyond the name of the payee." *See* Adam Leitman Bailey & Dov Treiman, *Moving Beyond the Mistakes of MERS to a Secure and Profitable National Title System*, PROB. & PROP., July/Aug. 2012, at 40, 42. Dow also notes that MERS has saved the banking

---

[13] PHH does not contend that MERS held the note at the time Dow purchased the property.

industry "roughly $1 billion" in recording fees—money that otherwise would have gone to local recording offices. *See id.* at 41. Dow further observes that, in one justice's opinion, MERS' practices "facilitated, if not created, the financial and banking crisis in which our country currently finds itself." *Jackson v. Mortgage Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 504 (Minn. 2009) (Page, J., dissenting).

¶ 43. We are not unsympathetic to Dow's complaints about MERS. However, Dow has not established that MERS' practices are prohibited by Wisconsin law. As previously discussed, under the doctrine of equitable assignment, a mortgage automatically transfers upon transfer of the associated note, without need for a written assignment. Dow should direct its policy arguments to the legislature, not to this court. *See State v. Stanley*, 2012 WI App 42, ¶ 43, 340 Wis. 2d 663, 814 N.W.2d 867.

¶ 44. No WIS. STAT. RULE 809.25(1) costs to either party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings.